NATHANIEL WHITING & another *vs.* MAYOR & ALDERMEN
OF THE CITY OF BOSTON.

NATHANIEL WHITING & others *vs.* SAME.

It is no excuse for refusal to pay an assessment levied on an estate abutting on a street in Boston, for the expense of an alteration of the street under the St. of 1865, *c.* 159, that the owner of the estate has suffered damage by the unreasonable delay of the aldermen in making the alteration, or by the negligent and imperfect manner in which it was made.

To an assessment levied on an estate abutting on a street in Boston, for the expense of an alteration of the street under the St. of 1865, *c.* 159, it cannot be objected by the owner of the estate, more than four years after the date of the taking of land for the alteration, that the alteration was not begun till a year after that date.

An assessment under the St. of 1865, *c.* 159, on an estate abutting on a street in Boston, for the expense of altering the street, is a lien on the estate for a year from the completion of the apportionment of the assessment on the several abutters.

Under the St. of 1865, *c.* 159, the mayor and aldermen of Boston may assess upon the estates abutting on a widened street the whole expense of widening, before they lay sidewalks therein.

The St. of 1865, *c.* 159 concerning the laying out of a new street in Boston, was not repealed by the Sts. of 1866, *c.* 174, and 1868, *c.* 276, concerning the laying out of streets in Boston generally.

If the assessment on an estate abutting on a street in Boston, levied by the mayor and aldermen, under the St. of 1865, *c.* 159, for the expense of altering the street, is too large by reason of including improper charges in the amount of expense to be apportioned, or of wrongly estimating or computing the amount, or of a disproportionate valuation of the estates subject to the assessment, the remedy is by petition for a jury, and not by bill in equity or *certiorari*.

The St. of 1865, *c.* 159, provided that the whole expense of altering a street in Boston should be assessed on the owners of adjoining estates. *Held*, that the fact that the order laying the assessment purported to be for the payment of a portion of the expense furnished no ground for the owner of an adjoining estate to refuse payment of the amount assessed on him.

An assessment for the expense of altering a street in Boston, under the St. of 1865, *c.* 159, is not rendered invalid by the fact that no part of the expense was assessed on passageways leading from the altered street to estates not abutting thereon, nor by the fact that part of land abutting on the street and belonging to the city was not at all assessed, as forming a street, and another part of such land was assessed at a less rate than other estates abutting on the street.

THE FIRST of these suits was a petition filed May 7, 1870, for a writ of *certiorari*, to be directed to the mayor and aldermen of the city of Boston, ordering them to return into this court the record of their doings in laying out and grading Oliver Street, Washington Square and Belmont Street in Boston, under the St. of 1865, *c.* 159,* alleging that assessments had been unlawfully made on the estate of the petitioners abutting thereon.

* " SECTION 1. The mayor and aldermen of the city of Boston are hereby authorized to widen and lay out, as a street, the line of street extending from Milk Street to Broad Street, in the said city, nearly parallel with Pearl Street, and now known by the names of Oliver Street, Washington Square, and Belmont Street, to take sufficient land for the same, to grade the same, and to assess the cost of such widening and grading, including damages for land and buildings taken for such widening, upon estates abutting upon said widened street, as hereinafter provided. But the determination so to widen and lay out said street shall be made by the mayor and aldermen, and recorded within one year from the passage of this act.

" SECTION 2. The said street shall be made not less than fifty feet wide, and shall be so graded that the rise or fall shall in no place exceed two feet and a half in one hundred feet of length.

" SECTION 3. In making the estimate of the cost aforesaid, for which the assessment herein provided is to be laid, the mayor and aldermen shall estimate the damages sustained by any person or persons, by the taking of land for the said widening, including the value of the whole of the buildings on the land, and part of which shall be so taken, deducting therefrom, however, the value of the materials to be removed, and of the buildings, if any, which will

Whiting *v.* Mayor & Aldermen of Boston.

THE SECOND was a bill in equity, praying that the mayor and aldermen might be restrained from collecting said assessments.

remain standing; but no person shall be entitled to claim further damages for the cutting off of such buildings, or injury to the same; and, in estimating the value of the land cut off by the said widening, the land so cut off shall be estimated at its value before the widening, and such estimate shall not include the increased value occasioned merely by the widening, laying out and grading of the said street.

"SECTION 4. The damages estimated according to the preceding section shall be paid to the persons entitled thereto, in the same manner, and upon the same conditions, as is provided by law in other cases of land taken for widening streets in the county of Suffolk.

"SECTION 5. Buildings and materials, remaining upon the land under the adjudication provided in section three, shall be taken care of by the owner thereof; and if such owner, after due notice so to do, by said mayor and aldermen, neglects or fails to take sufficient care thereof, said mayor and aldermen may take such care of the same as the public safety demands, at the expense of the owner; and if they shall adjudge a removal thereof to be necessary for the public security or necessity, they may remove the same at the expense of the owner, or they may sell the same after five days' notice, at public auction, and hold the net proceeds of such sale for the benefit of the owner.

"SECTION 6. The whole expense of the said widening, including the damages mentioned in the third section of this act, and the net expense of grading the whole widened street, after deducting the estimated net proceeds of the earth and gravel removed, shall be assessed upon all the estates abutting upon the said widened street, in proportion to their value, as they shall be appraised by the mayor and aldermen, when the improvements have been made.

"SECTION 7. All assessments made under this act shall constitute a lien on the real estate assessed, for one year after they are laid, and may, together with all incidental costs and expenses, be levied by sale thereof, if the assessment is not paid within three months after a written demand of payment, made either upon the person assessed, or upon any person then occupying the estate, or posted upon the premises; such sale to be conducted in like manner as sales for the nonpayment of taxes.

"SECTION 8. Any party aggrieved by the doings of the mayor and aldermen under this act shall have the like remedy by petition for a jury, and with the same limitations as to the time of bringing such petition, as in other cases of widening or altering streets in the county of Suffolk. And any person aggrieved by the estimate made by the mayor and aldermen, under the tenth section of this act, may have the same assessed by a jury in the same manner as damages for the taking of land for highways may be assessed.

The cases were heard together before the chief justice, and reported for the determination of the full court. At the hearing, it was agreed that no work was done on the new street laid out under the act, for one year from the time when the lands were taken in 1865. The plaintiffs offered to prove that " at the time of the taking of the lands for said street, in September 1865, the mayor and aldermen made a valuation of the estates abutting on said new street then laid out, at their worth when improved, as well as of their value at that time ; also, that said street was not paved till 1869 ; and also, that the sidewalks thereto have not yet been laid." The other facts are stated in the opinion.

*C. M. Ellis,* for the plaintiffs.

*J. P. Healy,* for the defendants.

WELLS, J. These suits grow out of the proceedings of the mayor and aldermen of the city of Boston in widening, laying out and grading Oliver and Belmont Streets, under the St. of 1865, *c.* 159. The determination so to widen and lay out said street was made and recorded within one year from the passage of the act, as therein required. The validity of that act, and of the powers thereby conferred upon the mayor and aldermen, were fully considered and settled in the case of *Dorgan* v. *Boston,* 12 Allen, 223.

" SECTION 9. The city of Boston, at its own expense, shall provide a suitable common sewer, and proper sidewalks, for the said street, pave the said street, as widened, and build the necessary bridges over it.

" SECTION 10. Any person owning any of the said estates abutting on the said line of streets mentioned in the first section, at any time before the estimation of the damages according to the third section of this act, may, instead of the provisions in section third, elect to surrender all of the said estate to the city of Boston. The mayor and aldermen of the said city shall thereupon estimate the value of the whole of the said abutting estate, with the buildings thereon, and the said owner shall convey the same to the said city, and the said city shall pay him therefor the value so estimated. And the said city shall sell at public auction all the building materials and buildings, and the remaining portion of said estate not used in said widening and grading, and the net proceeds thereof shall be applied towards the expenses of said widening and grading. And the estimated value of said estate, so paid by said city, shall be assessed upon the abutters, as provided in the sixth section of this act, instead of the damages estimated according to the said third section.

" SECTION 11. This act shall take effect upon its passage."

The mayor and aldermen have proceeded to widen and lay out the street; to assess and pay the damages to the abutters; to grade and construct the new street; and to assess the net expenses upon the estates abutting upon the widened street, according to § 6 of the act in question.

Both suits are brought to set aside the last named assessment, or to prevent the sale of the plaintiffs' land for the payment of the amount assessed thereon. So far as the bill in equity is founded upon the alleged illegality of the assessment, or the claim that the lien is lost by delay or other irregularity of the mayor and aldermen, it would be a sufficient defence that the remedy at law is plain, adequate and complete. *Loud* v. *Charlestown,* 99 Mass. 208. *Hunnewell* v. *Charlestown, post,* 350.

For the purpose of setting aside the proceedings in whole or in part, for any cause, *certiorari* is an effectual and the more appropriate remedy.

The claim of the plaintiffs, that they have suffered damage and loss of income from the property abutting on said street, by reason of the delay in prosecuting the work upon the improvement, and the negligent and imperfect manner of its performance, which ought to be applied to reduce or cancel the amount assessed upon them for the expenses, is one which, if well founded, would perhaps, to make it available, require a proceeding in equity.

We do not propose to consider whether such a claim of damages could be maintained against the city, or against the mayor and aldermen in any form. Even if a liability to such damages could be substantiated, in accordance with the principles laid down in *Child* v. *Boston,* 4 Allen, 41, we do not think it can be set up against an assessment required for paying the expenses of a public improvement, with which the mayor and aldermen are charged as public officers. It is a statute proceeding. The assessment is authorized, not merely as a means of enforcing a municipal claim, in the nature of a private right; it is prescribed as a public duty. The whole proceeding, including the assessment and collection of the amount of the expenses, depends upon the provisions of the statute, and must be regulated entirely by them. Those provisions neither contemplate nor admit of such investigations as

would be necessary to enable parties assessed to avail themselves of any counter claims they may have, growing out of the mode in which the power has been exercised. To require the collection of the assessments to be delayed for that purpose would be a serious obstruction and embarrassment to the discharge of a public duty, and inconsistent with the limited period allowed for the continuance of the lien upon the land.

Several objections are made to the legality of the proceedings:

1. That " no work was done on the new street " " for one year from the time the lands were taken in 1865." If this would originally have been a sufficient ground for staying further proceedings, the plaintiffs cannot avail themselves of it now, after standing by for so long a time while the work was performed and expenditures incurred. This is a just and well established principle, applicable as well to *certiorari* as to a bill in equity.

2. That the delay to complete the work for an unreasonable time invalidates the proceedings, and deprives the defendants of the right to assess the expenses. The statute imposes no limit of time within which the work shall be done. We cannot say, from the lapse of time merely, that there has been unreasonable delay. If there were, we do not think it would operate to vacate the proceedings, or to deprive the mayor and aldermen of the power to complete the work and make the assessment. The statute does not confer the power of assessment merely as a right; it requires its exercise as a duty, to be performed by the mayor and aldermen in behalf of the public. If they neglect to proceed, after having once determined to lay out the street under the act, or delay unreasonably, they may be quickened by *mandamus*. It would be inconsistent with the public interests, as well as the obvious purpose of the statute, to allow an individual proprietor, who is put to inconvenience by what he deems to be unnecessary delay in executing the work, to seek his redress by setting aside proceedings instituted for a public object and by public authority.

3. It is contended that the lien upon the real estate has been lost by reason of the delay. This argument rests, as we understand it, upon the positions that the valuation of the improved

estates, upon which the assessment is to be apportioned, was made at the time of taking the land in September 1865 ; that the subsequent assessment, whenever in fact made by actual apportionment, was in legal effect laid as of September 1865 ; and therefore that the lien expired in one year from that time. But the valuation of the estates is only a preliminary step in the process. From the nature of the case, the assessment could not be made until the completion of the work. One element in the apportionment, the "net expense of grading the whole widened street," cannot sooner be ascertained. We do not think the statute contemplates that the net expenses will be ascertained by estimation beforehand. Nor do the papers in the case show that it was so made in fact. The statement in the first report of the mayor and aldermen, that the cost to the city would be nothing, does not appear to be such an estimate. It indicates only that the whole cost would be borne by the abutters, as is provided by the statute.

The provision in § 10, for an election by the abutter to surrender his estate, cannot bear upon this question. That election must be exercised "before the estimation of the damages." Neither his right to make the election, nor his discretion in making it, can be affected by the time of laying the assessment. No argument, therefore, can be drawn from that source as to the time when the assessment should be made. The determination of the amount to be assessed, and the apportionment thereof, are separate adjudications. The assessment is not laid until both these adjudications have been made.

The provisions of the general tax laws do not seem to us to furnish any analogy against this interpretation of the St. of 1865, *c.* 159. The first day of May is fixed as the date with reference to which the valuation of estates is made and the liability to taxation attaches. But the continuance of the lien for taxes upon real estate is reckoned from the time when the taxes are committed to the collector. Under the St. of 1865, we think the continuance of the lien must date from the completion of the apportionment.

The evidence, therefore, offered to show that a valuation of the estates abutting on the widened street, at their worth when im-

proved, was made at the time of laying out the street, was imma-
terial, and properly rejected. We do not understand that it was
offered for any other purpose than to show that the year for the
continuance of the lien commenced at that time, and therefore
had expired before the assessment was laid.

4. The objection that sidewalks had not been laid is not suffi
cient to impeach the assessment as premature. If sidewalks are
necessary to the proper completion of the street for public use,
the city is not discharged of its obligation to provide them. The
work which the statute contemplates is that of " grading the
whole widened street." There has been, undeniably, a substan-
tial performance of this work. We think it was competent tor
the mayor and aldermen to proceed to assess the expenses of lay-
ing out and grading the street, leaving the work of completing
and fitting it for convenience of the public use to be done in the
ordinary mode of superintendence of streets. The plaintiffs are
not prejudiced by such action, as it lessens the expense to be as-
sessed upon abutters.

5. The plaintiffs contend that, if the statute authorized such
unreasonable delay as is complained of in this case, the statute
itself could not be sustained, and therefore that the delay must
be held to be so contrary to the statute as to render the proceed-
ings void. We do not discover the extreme hardship from this
cause, which is so strenuously urged. The whole damages to the
abutters, including the entire value of any building in part taken,
are assessed and paid in the outset. No deduction is allowed to
be made on account of benefits, as in the cases of locating ways.
The city can have no repayment, and the abutter is charged with
no burden, for the expenses of the improvement, until it has been
completed. The mayor and aldermen are undoubtedly bound to
proceed without unreasonable delay. But it does not follow that
the remedy for neglect is to be found in defeating the public rights
under the statute. We do not think the plaintiffs can have relief
or redress in that mode, even if they have suffered wrong for
which they ought to have redress in some form.

6. It is contended that the St. of 1865, *c.* 159, is modified by
the subsequent Sts. of 1866, *c.* 174, and 1868, *c.* 276, and that

the proceedings in this case are irregular because they do not conform to the later statutes. The Sts. of 1866 and 1868 do indeed apply to all streets in Boston. They contain general provisions relating to the laying out and altering of streets by the board of aldermen. But they contain nothing which indicates an intention to repeal the St. of 1865 ; and their provisions are not necessarily inconsistent with the continuance of all the special powers granted in that statute. Those powers were already put in exercise before the St. of 1866 was passed. The implication is strong against an interpretation which would defeat the completion of proceedings properly commenced under an existing statute.

A more decisive answer to the plaintiffs' position is, that the tribunal intrusted with the powers in the two cases is not the same. The Sts. of 1866 and 1868 relate to the board of aldermen, who have general authority over ways in the city of Boston, under the Gen. Sts. *c.* 43, § 77; while the St. of 1865, *c.* 159, creates a special tribunal composed of the mayor and aldermen. The subsequent statutes therefore are not applicable by way of modification ; and there is no repeal. It is unnecessary to notice in detail the several points taken by the counsel for the plaintiffs, founded upon the supposed modification of the statute.

7. Several objections are alleged to the manner in which the valuations and apportionment were made for the purposes of the assessment. The statute provides for an appeal to a jury by any party " aggrieved by the doings of the mayor and aldermen." That is the appropriate tribunal for the most of the alleged grievances in this respect. So far as the assessment upon the estates of the plaintiffs is too large, by reason of including improper charges in the amount of expense to be apportioned, or wrongly estimating or computing the amount; or by a disproportionate valuation of the several estates made subject to the assessment; the revision is to be made by a jury, in the manner provided by the act. It is true that by such revision the plaintiffs could only have their own assessment reduced to the amount which should properly have been laid upon their estates ; which, in case the error arose from the under-valuation of other estates, would fall short of establishing the proportionate distribution of the bur-

den contemplated by the statute. It would not be otherwise with any relief that could be afforded upon this bill in equity, if the court were to undertake a revision of the apportionment. To annul the entire assessment upon the plaintiffs would be to correct an alleged inequality in one direction by creating a greater in another direction, which would be unjust towards the other abutters, who are not parties here, and who may have paid their assessments, or may be disinclined to contest the proceedings.

It is not made to appear that any of the alleged irregularities were fraudulent, or otherwise than errors of judgment merely. Nor is it so alleged. The plaintiffs, however, contend that some of them are such as, upon their face, show a violation or disregard of the statute, sufficient to render the proceedings void.

The statute provides that the whole expense shall be assessed. The order of apportionment directs that a certain amount be assessed, " being for the payment of a portion of the expense." The amount named in the order does not appear to be greater than the net expense, ascertained as required by the statute. Upon the papers exhibited it seems to be less; and it is claimed to be so by the defendants. The plaintiffs cannot reasonably complain of this; and it is not an uncertainty in the order, nor a departure from the statute which can affect the validity of the order.

It appears that there are several narrow strips of land, designated as " passageways " upon the schedules filed in the case, for some of which damages were allowed as for land taken, but which were entirely omitted from the schedule of estates upon which the expense was apportioned. These passageways ran at right angles to the new street, and led to estates in the rear of those which abutted upon the street. It is not shown by what title these several strips of land were held, nor to what rights of way they were subject. From their description and designation we infer that the lands, however owned, were subject to such rights of way, in favor of parties or estates not abutting upon the street, as to preclude their use or occupation for any other purpose than as passageways. In that case, although the owner of the land might properly be entitled to damages for such part thereof

as should be taken into the widened new street, yet the remainder would not be such an estate abutting upon the street as would be capable of satisfying the lien which the statute gives as the only means of securing repayment of the expenses incurred. The rights of way, whether held in gross or as appurtenant to estates not abutting upon the street, do not themselves constitute an estate abutting on the street, and are not liable to assessment for that reason. We do not think that the statute contemplated that land subject to such servitudes as mere passageways, incapable of beneficial use otherwise by the owner, and therefore unsalable as estates, should be included among the estates from which the city may obtain indemnity for the expenses which it is entitled to have levied upon the abutters. So far as the adjoining estates are benefited by such passageways, we are to presume that allowance was properly made in their valuation.

Another objection is, that Washington Square was not fully assessed ; a considerable portion, 9000 feet, being entirely omitted, as forming a street around it, although no street had then been made or laid out in fact ; and the remainder being valued at a much less price per foot than were other lands in the same vicinity. But it is not shown by what title the square is owned by the city ; nor under what restrictions as to its use it is held. Its designation indicates that it is held for some public use, and not as property to be sold or occupied for purposes of business. If it has been dedicated, or its use restricted to the purpose of a public square, for the convenience and advantage of the estates in its vicinity, we think the mayor and aldermen would have been justified in omitting it altogether from the apportionment. Even if devoted to the purpose of some public building, its value as an estate might be properly measured by a standard different from that applied to lands to be occupied for purposes of business or residence. We do not think the case discloses any reason for holding, as matter of law, that the omission of a part, as held for the purpose of a street, and the valuation of the remainder at a rate less than other estates on the street, were in violation of the duties and contrary to the authority of the mayor and aldermen, so as to render their action illegal and void.

The plaintiffs having failed to show any sufficient ground for setting aside the proceedings of the mayor and aldermen, or for interference in equity, the bill in equity must be dismissed, and the writ of *certiorari* refused.              *Ordered accordingly.*