DWIGHT FOSTER & others *vs.* BOARD OF PARK COMMISSIONERS OF THE CITY OF BOSTON.

Suffolk.   Sept. 9, 1881. — Sept. 7, 1882.   C. ALLEN, J., did not sit.

The St. of 1875, c. 185, authorized a board of park commissioners to locate and lay out within the city of Boston a public park, to take such lands as the board should deem desirable therefor, and to assess upon any real estate in Boston, which, in the opinion of the board, should receive any benefit and advantage from such locating and laying out, beyond the general advantages to all real estate in the city, "a proportional share of the expense of such location and laying out," the entire amount so assessed upon any estate not to exceed one half of the amount adjudged by the board to be the whole benefit received by it.   The board purchased a large tract of flats, over part of which the tide flowed, the rest being marsh, and proceeded to lay out avenues and to fill them with gravel; and, when but a small portion of the area was filled, and none of the avenues were completed, passed an order declaring that they had taken, and did thereby take and create, as a public park, certain land, being in fact that already purchased, and also passed a further order reciting that, whereas by the previous order a park was located and laid out, they laid an assessment upon certain lands benefited thereby.   This assessment was in fact less than the sums which had then been expended for the purchase of the land and for the filling already done.   *Held*, on a petition for a writ of certiorari, by the owners of estates so assessed, to quash the assessment, that the park was laid out, within the statute; and that the court could not say, as matter of law, that the estates of the petitioners had not been benefited by what had been done at the time the assessment was made.

PETITION for a writ of certiorari to quash an order of the board of park commissioners of the city of Boston under the St. of 1875, c. 185,* assessing lands of the petitioners and others for

---

* By §§ 1, 2, the mayor of the city of Boston is authorized, with the approval of the city council, forthwith to appoint three commissioners, who shall constitute a board of park commissioners.

By § 3, " said board shall have power to locate within the limits of the city of Boston one or more public parks; and for that purpose, from time to time, to take in fee, by purchase or otherwise, any and all such lands as said board may deem desirable therefor; or to take bonds for the conveyance thereof to said city; to lay out, improve, govern and regulate any such park or parks, and the use thereof; to make rules for the use and government thereof;" "and generally to do all needful acts for the proper execution of the powers and duties granted to or imposed upon said city, or said board, by this act: provided, however, that no land shall be taken, or other thing involving an expenditure of money done, until an appropriation, sufficient to cover the estimated expense thereof, shall have been made by a vote of two thirds of each branch of the city council of said city."

By § 4, the board shall, within sixty days of the taking of any land under the statute, file a description thereof in the registry of deeds.   By § 5, the

:special benefits received from the locating and laying out of a park. The record showed the following facts:

By an order of the city council, passed by vote of more than two thirds of each branch, and approved by the mayor on July :23, 1877, the treasurer was authorized to borrow, under the direction of the committee on finance, the sum of $450,000, "to be expended by the park commissioners in the purchase of not less than one hundred acres of land or flats" within certain boundaries in the Back Bay, so called; and by another order, approved on December 24, 1877, the park commissioners were authorized "to complete the purchase of any part or parts of the said tract, upon the terms provided in the said order, at such times as they shall deem expedient." By an order of the city council, approved November 21, 1879, the park commissioners were authorized, so

---

board shall estimate and determine all damages sustained by the taking of land, or other acts of the board in the execution of its powers; but any party aggrieved by such determination may have his damages assessed by a jury in the Superior Court, as in the case of "damages sustained by reason of the laying out of ways in the city of Boston." By § 6, the fee of all lands taken or purchased by the board shall vest in the city of Boston; the city shall be liable to pay all damages assessed or determined as provided in § 5, and all other costs and expenses incurred by the board in the execution of its powers; and is also authorized "to take and hold in trust or otherwise any devise, grant, gift or bequest that may be made for the purpose of laying out, improving or ornamenting any parks in said city."

By § 7, "any real estate in the city of Boston, which in the opinion of said board shall receive any benefit and advantage from the locating and laying out of a park under the provisions of this act, beyond the general advantages to all real estate in the city of Boston, may, after like notice to all parties interested as is provided by law to be given by the street commissioners of the city of Boston in cases of laying out streets in said city, be assessed by said board for a proportional share of the expense of such location and laying out: provided, that the entire amount so assessed upon any estate shall not exceed one half of the amount which said board shall adjudge to be the whole benefit received by it.

By § 8, "no assessment shall be made as provided in the preceding section, except within two years after the passage of the order, the execution of which causes the benefit for which the assessment is made." By the subsequent sections, all assessments made under this statute shall constitute a lien upon the real estate so assessed; and any party aggrieved by any assessment may have the amount of the benefit received by his estate assessed by a jury, as in the case of the laying out of ways in Boston.

far as the assent of the city council might be necessary thereto, to exercise their power of taking land for the proposed park. Before December 27, 1879, about one hundred and five acres of land and flats were purchased by the park commissioners, were conveyed to the city by deeds duly recorded, and were paid for by the city.

On December 18, 1879, the board of park commissioners passed an order, reciting that, in the opinion of the board, it was " desirable that a parcel of land belonging to the city of Boston" (then follows a description of the land and flats aforesaid) and certain parcels owned by other parties (likewise described) " should be taken and laid out as a public park," and directing notice to all persons interested " that this board intend to take the lands before mentioned, and lay out the same as a public park," and to assess a portion of the expense thereof upon the estates that will be benefited by " the said proposed laying out of said park," and that any objections " to said taking and laying out or to said assessment" would be heard on December 26, 1879.

On the day so appointed, a hearing was had accordingly, at which no one appeared to object to the taking and laying out as a public park of the lands described in the notice, but objections were made by several persons to assessments of betterments ; and, on December 27, 1879, the board of park commissioners passed the following orders for taking the lands for a public park and assessing betterments therefor :

First.   An order stating that the commissioners, " by the authority conferred upon us by the said act, and by the city council of said city of Boston, which has made the appropriation necessary to cover the estimated expenses of our action in the premises, have taken, and hereby do take and create as a public park or parks, the following described parcels of land, with all the buildings and fixtures thereon, situated in the said city of Boston, viz." (then followed descriptions of the lands,) " to have and to hold the said several parcels of land to the said city of Boston, its successors and assigns, to its and their sole use and benefit forever, agreeably to the provisions of said act."

Second.   " Whereas, pursuant to an act of this board passed December 27, 1879, a public park or parks was located and laid

out in the city of Boston at an estimated expense of $465,226.10;
and whereas, in the opinion of the board, the estates named in
the foregoing schedule have been benefited by the location or
laying out of said park or parks, and due notice has been given
of the intention of the board to assess betterments thereon; it is
therefore hereby voted, that the estates named in the schedule
be, and they hereby are, respectively charged with the sums
therein severally set against them, such sums so assessed not
exceeding one half the amount of the adjudged benefit to the
estates by the said location and laying out."

The schedule prefixed to the last order is entitled "Schedule
of assessments made by the board of park commissioners upon
the estates benefited by the locating and laying out of a public
park or parks in the city of Boston, as authorized and enacted
by a resolve and act of the board, passed December 27, 1879, the
expense of which was estimated at the time of the passage of
said location and laying out at $465,226.10." The schedule con-
sists of five columns, successively showing the number of each
lot on a plan, its approximate area in feet, its owner, its boun-
daries, and the amount assessed upon it; and includes lands
owned by the petitioners.

The respondents, in the answer originally filed by them to the
petition for a writ of certiorari, stated that, in making the sev-
eral assessments upon the estates described in the schedule, they
assessed upon each estate one half of the amount which the
board adjudged to be the whole benefit received by it from the
locating and laying out of the park; and they were allowed to
amend their record accordingly, by inserting in the schedule of
assessments a column showing the whole amount of benefit and
advantage that these estates had respectively received by said
location and laying out, as then adjudged, by which it appeared
that this amount was, as to each estate, exactly twice the amount
of the assessment upon it.

Upon this record, the court decided that the St. of 1875,
c. 185, did not authorize any assessment to be laid except for
the amount of expenses which had either been actually paid,
or had been so far incurred that the city was under a liabil-
ity to pay from which it could not escape; and the case was
ordered to stand for further hearing before a single justice, to

give the respondents an opportunity to show that the city had paid or become liable for the amount assessed. 131 Mass. 225, 230.

A further hearing was accordingly had before a single justice, at which it was agreed that the respondents had, under the orders of the city council, previously to December 27, 1879, expended on account of the park the sum of $551,454.06, of which sum $439,690.90 was expended for the purchase of land, and $108,015.42 for filling, grading, and contingent expenses, and $3747.74, for surveying and plans. It further appeared from a plan used at the hearing, that, when the assessment was laid, certain avenues had been filled with loose gravel and ashes, the upper surface of which was from four to ten feet below the grade finally intended for the avenues, and was level, but not smoothed or in any way or respect prepared for public use; that the area filled was but a small portion of the entire territory, and that the filling done was pursuant to a plan previously filed. There were also creeks and mud flats over which the tide ebbed and flowed, and outside of these creeks, except where the avenues had been filled as above stated, the land was a sedgy marsh in its natural state, covered occasionally by the high tide.

At the request of both parties, the case was reserved for the consideration of the full court, and for the entry of such order or judgment as law and justice might require.

*D. Foster & H. D. Hyde,* for the petitioners.

*H. W. Putnam,* for parties having similar interests, was permitted to file a brief in support of the petition.

*E. P. Nettleton,* for the respondents.

FIELD, J. The petitioners ask that the order of the park commissioners laying an assessment may be quashed, on this ground among others, that at the time of the passage of the order the park was not in any sense constructed so as to be fit for public use as a park. It appears, indeed, by the record of the park commissioners, that a park had been located and laid out; but the petitioners contend that it is competent for them to show by evidence that the park had not in fact been laid out within the meaning of the words "laying out" contained in the statute, and that the facts agreed show this; that the taking of the land and calling it a public park are not laying out a park within

the meaning of the statute, and that the assessment for benefits cannot be made before the order laying out a park has been executed by the construction of the park.

The St. of 1875, c. 185, however difficult it may be to construe, is largely made up of words and clauses that have been used in previous statutes relating to similar subjects. The St. of 1874, c. 97, which is " An act to provide for a public park in the city of Somerville," is, however, more explicit than the St. of 1875, c. 185, in the matter of assessment for benefits. Section 3 provides that, " at any time within two years after the land is purchased or taken under this act, the city council " may assess " a proportional share of the cost of the land so purchased or taken, and of the expense of laying out, grading and making said park; but in no case shall the assessment exceed one half of the amount of such adjudged benefit and advantage. Nor shall the same be made until the work of laying out, grading and making said park is completed." This statute was held to be constitutional in *Holt* v. *City Council of Somerville*, 127 Mass. 408.

The St. of 1871, c. 382, § 1, provides that, " at any time within two years after any street, highway or other way is laid out, altered, widened, graded or discontinued," the board of city or town officers may assess " a proportional share of the expense of laying out, alteration, widening, grading or discontinuance; but in no case shall the assessment exceed one half the amount of such adjudged benefit and advantage, nor shall the same be made until the work of laying out, altering, widening and grading is completed or discontinuance made."

The St. of 1869, c. 367, § 1, required that " such assessment shall be laid within two years after the passage of the order for the laying out, widening, extending, discontinuing, grading or altering, and not afterwards." The St. of 1869, c. 169, extended the St. of 1866, c. 174, and the St. of 1868, c. 276, to all towns of the Commonwealth which by vote should accept the act, and to all cities which had accepted or should thereafter accept the St. of 1868, c. 75; and in § 1 provided that "no assessments shall be made under the provisions of said acts until the work of laying out, altering, widening and improving any street or way shall be completed."

The St. of 1868, *c.* 276, and the St. of 1866, *c.* 174, both provided that in the city of Boston the board of aldermen may assess upon each estate a proportional share of the expense of laying out, widening or discontinuing, grading or altering streets, not exceeding one half the amount of the " adjudged benefit and advantage ; " but in neither statute was there any provision that the assessment should not be made until the work was completed, or should be made within any specified limit of time. These conditions were imposed, the first by the St. of 1869, *c.* 169, and the second by the St. of 1869, *c.* 367.

*Chase* v. *Aldermen of Springfield*, 119 Mass. 556, and *Lincoln* v. *Worcester*, 122 Mass. 119, both arose under the St. of 1871, *c.* 382, which required the work of laying out, altering, widening and grading to be completed before the assessment could be made.

*Hitchcock* v. *Aldermen of Springfield*, 121 Mass. 382, arose under the St. of 1871, *c.* 382, and decides that " within the meaning of this statute, a street is ' laid out, altered, graded,' &c., when the order to lay out, alter or grade is passed by the competent authority. The date of the passage of such an order fixes the time from which the rights of the parties are to be determined, and when the limitation of two years begins to run."

*Whiting* v. *Mayor & Aldermen of Boston*, 106 Mass. 89, arose under the St. of 1865, *c.* 159. Section 6 of this act provides that " the whole expense of the said widening, including the damages mentioned in the third section of this act, and the net expense of grading the whole widened street, after deducting the estimated net proceeds of the earth and gravel removed, shall be assessed upon all the estates abutting upon the said widened street, in proportion to their value, as they shall be appraised by the mayor and aldermen, when the improvements have been made." Two questions, among others, were decided in this case, which have a resemblance to some of the objections to the assessment taken in the case at bar. The court say: " The objection that sidewalks had not been laid is not sufficient to impeach the assessment as premature. If sidewalks are necessary to the proper completion of the street for public use, the city is not discharged of its obligation to provide them. The work which the statute contemplated is that of ' grading the whole

widened street.' There has been, undeniably, a substantial per-
formance of this work. We think it was competent for the
mayor and aldermen to proceed to assess the expenses of laying
out and grading the street, leaving the work of completing and
fitting it for convenience of the public use to be done in the
ordinary mode of superintendence of streets. The plaintiffs are
not prejudiced by such action, as it lessens the expense to be
assessed upon abutters." 106 Mass. 96. Again, on page 98, the
court say : " The statute provides that the whole expense shall
be assessed. The order of apportionment directs that a certain
amount be assessed, ' being for the payment of a portion of the
expense.' The amount named in the order does not appear to
be greater than the net expense, ascertained as required by the
statute. Upon the papers exhibited it seems to be less ; and it
is claimed to be so by the defendants. The plaintiffs cannot
reasonably complain of this ; and it is not an uncertainty in the
order, nor a departure from the statute which can affect the va-
lidity of the order."

*Prince* v. *Boston*, 111 Mass. 226, arose under the St. of 1866,
c. 174, and it was decided that the assessment of the betterments
might be laid after the widening of the street. The court say :
" But we have recently decided that an assessment of this kind
is necessarily subsequent to the widening. From the nature of
the case it cannot be made until the completion of the work.
One element in the apportionment, the net expense of grading
the whole widened street, cannot be sooner ascertained." 111
Mass. 230. And again, on page 231 : " It is therefore not only
unnecessary, but it is also impossible, that the assessment of the
expenses among the persons who have derived benefit from the
improvement should be contemporaneous with, and make a part
of, the original adjudication widening the street and awarding
damages."

*Jones* v. *Aldermen of Boston*, 104 Mass. 461, contains four
cases, two of which arose under the St. of 1866, c. 174, and two
under that statute as amended by the St. of 1868, c. 276. The
court say, on page 465 : " The right of the petitioners to dam-
ages, and their liability to be assessed for benefits received by the
widening, accrued at the time of the widening. The assessment
of the damages, and the adjudication of the amount of benefit

which has been received, must of necessity be made at some time subsequent to the widening. But they merely declare the damages sustained, or the benefit received, by and at the time of the widening. The liability to assessment is not created by the adjudication of the aldermen, but by the fact that benefit is received from the widening; and it accrues at the time of the widening, and is to be estimated as of that date. *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313. *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291. *Parks* v. *Boston*, 15 Pick. 198."

*Chase* v. *Aldermen of Springfield*, 119 Mass. 556, arose under the St. of 1871, *c.* 382. The court say, on page 562: "The objection ' because no grade line has been established,' is not well founded. The statutes do not require that such a line shall be formally established and defined upon the record of the proceedings, except so far as may be necessary to a proper specification of the manner in which the new highway or alteration shall be made. Gen. Sts. *c.* 43, § 13. So far as the rights or liabilities of abutters are affected by the grade of the street, they depend on and are determined by the grade as actually constructed." In this case the record of the board of aldermen was amended so as to show the whole amount of the expenses, and as it appeared that the amount of the assessment for benefits did not exceed the whole amount of the expense of laying out and of construction, nor half the amount of the benefit to all the estates, the petition for a writ of certiorari was dismissed.

The words "laying out," "locating anew," "altering," "widening," "grading" and "discontinuing," when used in statutes in reference to highways, have each a well-known meaning. Pub. Sts. *c.* 49.

"Laying out" is, and has been from the earliest times, the appropriate expression for locating and establishing a new highway. Without citing colonial or provincial statutes, reference may be made to the St. of 1786, *c.* 67. Section 4 of that statute provided that, after it has been ascertained to be of common convenience or necessity to have a new way laid out, the Court of General Sessions of the Peace shall appoint a committee to lay out said highway, "and they shall ascertain the place and course of said road, in the best way and manner they can; which having done, they, or the major part of them, shall make return thereof, under their

hands and seals, to the next Court of General Sessions of the
Peace to be held in the same county, after the said service is per-
formed; to the end the same may be accepted, allowed and re-
corded, and afterwards known for a public highway." "And
said committee are empowered and required, under oath, to esti-
mate the same," that is, the damages occasioned by the laying out,
"and make return thereof as aforesaid. And if any person find
himself aggrieved by the doings of the said committee, in locat-
ing said way, or in estimating damages, he may apply to the
Court of General Sessions of the Peace, provided such applica-
tion be made to the said court that shall be held in the same
county, next after the acceptance of said return," &c. The
committee were required to ascertain the "place and course
of said road," but there is no provision requiring a specifica-
tion of the grade or the manner in which the road shall be
constructed.

The St. of 1827, c. 77, which established county commissioners,
required, in § 7: "And when they shall order any highway or
road to be laid out, or altered, the said county commissioners shall
perform all the duties by law required of committees for laying
out highways. And they shall also determine, and specify in
their return of said laying out or alteration, the manner in which
the highway or road so laid out, or altered, shall be made, and
the time or times within which the same shall be completed."
This provision, with others, was incorporated in the Rev. Sts.
c. 24, § 10. See also Gen. Sts. c. 43, § 13; Pub. Sts. c. 49, § 9.

The provisions of statute giving an owner of land compensa-
tion for damage occasioned by reason "of any raising, lowering,
or other act done for the purpose of repairing such way," was
first enacted in the Rev. Sts. c. 25, § 6, in consequence, perhaps,
of the decision in *Callender* v. *Marsh*, 1 Pick. 418. See *Brown*
v. *Lowell*, 8 Met. 172.

The principle, in assessing damages, of deducting from the
general damages any special benefit resulting to the land-owner
from the laying out of the way, has been constantly recognized
by the court. *Commonwealth* v. *Norfolk Sessions*, 5 Mass. 435.
*Commonwealth* v. *Middlesex Sessions*, 9 Mass. 388.

As, under the early statutes, the order of laying out a highway
did not necessarily, in reference to the manner of construction,

specify anything more than the "place and course of said road," under such an order the highway might be constructed in any manner which the authorities might determine to be necessary to make it safe and convenient for travellers, and then it might, after its original construction, be raised or lowered by the authorities, without making any new compensation to the land-owner. As the early statutes did not require the highway to be constructed within any fixed time, but did require the committee, which laid out the way, to estimate the damages, and, if any person was aggrieved by the doings of said committee in locating said way or in estimating damages, required that application be made by him to the Court of General Sessions of the Peace held in the county next after the acceptance of the return of the committee, which court, by a jury or by a new committee, might determine the damages "and also finally fix and determine the place of such road or highway," (St. 1786, *c.* 67, §§ 4, 5,) it must often have happened that the damages, including the special benefit to be deducted, were assessed before the land taken for a highway was actually entered upon for the purpose of constructing the highway. They must have been assessed with reference not only to a way to be constructed, but also to any probable or possible change within the original limits in the grade or construction of the highway, which the authorities at any time after the original construction might deem it necessary to make. Under existing laws, damages for the taking of land for a highway, including the special benefit to be deducted, may be determined before the land has been entered upon and possession taken for the purpose of constructing the way, although they are not payable until after such entry and possession. Pub. Sts. *c.* 49, § 14. It is unnecessary to say that, after a way has been laid out, no additional order or adjudication is necessary to construct it. Undeniably, if the words "locating and laying out of a park," in the St. of 1875, *c.* 185, § 7, are to receive the same construction as the words "laying out of a highway" receive in the statutes relating to highways, this park was duly located and laid out by the first order of the park commissioners, passed December 27, 1879.

It is contended, however, that the words "laying out," in the St. of 1875, *c.* 185, cannot have the same meaning as in the statutes

relating to highways, but must mean so to arrange, improve and construct a park that it may be fit and convenient for public use, and that the park is not laid out until it is so improved and constructed. The contention is not that authority to locate and lay out a park, even if § 3 of the statute did not expressly give the board of park commissioners authority to improve, govern and regulate it and the use thereof, would not necessarily imply authority to construct a park; but the contention is that until the park is constructed it is only located, and not laid out.

The St. of 1875, c. 185, established a board of park commissioners, and in § 3 it is provided that "said board shall have power to locate within the limits of the city of Boston one or more public parks; and for that purpose, from time to time, to take in fee, by purchase or otherwise, any and all such lands as said board may deem desirable therefor; or to take bonds for the conveyance thereof to said city; to lay out, improve, govern and regulate any such park or parks, and the use thereof; to make rules for the use and government thereof," "and generally to do all needful acts for the proper execution of the powers and duties granted to or imposed upon said city, or said board, by this act," &c.

It is to be noticed that this is a power to locate more than one park, and the construction of this act must be the same whether any particular park is located where this park has been, or in South Boston, or in what was Roxbury, or Dorchester, or Brighton, or in any other place within the limits of the city of Boston. The particular condition of the land taken for a park at the time it is taken, whether or not it is in a suitable condition for immediate public use as a park, can have no effect upon the construction to be given to the act. What then is the meaning of the location, as distinguished from the laying out of a park? The word "locating" has not acquired a technical signification in our statutes, except perhaps in the locating anew of a road. Pub. Sts. c. 49, § 13. Gen. Sts. c. 43, § 12. The word "location" is sometimes used, in the statutes relating to ways, to mean the land included within the limits of the way as laid out, and sometimes as synonymous with "laying out." The ordinary meaning of the words "to locate" is "to ascertain and determine the place of," and in this sense they

might well be used in connection with the technical words " to lay out." If the statute had authorized the board to determine the place of one or more public parks, and to lay them out, no difficulty would have arisen in the construction of these words. The laying out would have been the formal, definite designation of the boundaries of the land in the place determined upon, and the dedication and establishment of the land so bounded as a public park.

It is argued that, as in § 3 the words " to locate " are used in the first clause of the section, and the words " to lay out " in a subsequent clause in connection with " improve, govern and regulate any such park or parks," the words " to locate " must be construed in the sense in which the words " to lay out " are used in statutes relating to highways, and that " to lay out " must be construed to mean something analogous to the words " to improve," &c. But without considering how much weight ought to be given to the particular words of this section, disconnected from the other provisions of the statute, such an argument gives no distinct force to the words " to lay out."

It was undoubtedly the intention of the statute to give the board of commissioners full authority to locate and lay out a park or parks, and to construct, improve, govern and regulate such parks as should have been by them located and laid out, subject to the provision " that no land shall be taken, or other thing involving an expenditure of money done, until an appropriation, sufficient to cover the estimated expense thereof, shall have been made by a vote of two thirds of each branch of the city council of said city." If the intention of the statute had been that the commissioners should only locate and lay out parks, and that some other authority should construct, improve, govern and regulate the parks so laid out, the additional words " improve," &c. would of course have been omitted. The construction and regulation of public parks is not governed by general laws, and in § 3, the words " to improve, govern and regulate " were inserted for the purpose of making it certain that such powers were conferred upon a board specially constituted by that statute, and were not inserted for the purpose of modifying the meaning of the words " to lay out," as established in this Commonwealth.

Section 7 provides that all benefit and advantage to real estate for which an assessment may be laid shall be " any benefit and advantage from the locating and laying out of a park under the provisions of this act." Nothing here is said of any benefit and advantage to real estate from the improvement of the park, and this tends to show that no assessment is authorized for any other benefit than that which is received from what is involved in the locating and laying out of the park.

The St. of 1871, c. 382, § 1, authorizes an assessment for benefits, not only when a new way is laid out, but also when an old way is altered, widened, graded or discontinued. Under this statute the benefit received from the laying out of a new way is the benefit received from the laying out and construction of the new way, and undoubtedly the benefit received from the locating and laying out of a park, in § 7, is the benefit received from the locating, laying out and construction of a park; but there is no provision for any new assessment for benefits received from any alteration or improvement of the park made after the park has been once laid out and constructed. When a way is laid out, there is an obligation existing somewhere to construct it as laid out, and this statute undoubtedly imposes an obligation on the board of park commissioners to construct the park laid out in some manner to be determined by them, if sufficient appropriations of money are made by the city council. It is unnecessary to determine here whether, if the city council should refuse or neglect to make sufficient appropriations, or if, sufficient appropriations having been made, the board of park commissioners should refuse or neglect properly to construct the park, a writ of mandamus would issue, as in the case of a neglect or refusal to construct a way lawfully laid out. See *Richards* v. *County Commissioners*, 120 Mass. 401; *Whiting* v. *Mayor & Aldermen of Boston*, 106 Mass. 89.

It is impossible to hold, as matter of law, that a park cannot be located and laid out, even if there is no adequate provision of law whereby courts can compel it to be constructed in a manner which they may deem suitable for public use. If it becomes a nuisance, it can be abated; and there might be a public park, intended to be kept open for prospect, air and light, or

as a protection against the spread of fires, or for other purposes, and not intended to be entered upon and used by travellers. By § 5, the damages for the taking of land are to be determined " in the same manner as is provided by law with respect to damages sustained by reason of the laying out of ways in the city of Boston," and § 7 requires notice to be given " to all parties interested as is provided by law to be given by the street commissioners of the city of Boston in cases of laying out streets in said city," and we see no reason to hold that the Legislature used the words " laying out " in two different significations in the act. We think the words " laying out," as well as the words " to lay out," were used in the act according to their established meaning in statutes relating to ways, and that the park was legally located and laid out by the first order passed by the board of park commissioners, December 27, 1879.

It is argued that, in consequence of the provisions of § 8, as well as in the nature of things, the assessment for benefits cannot be laid until the park is substantially constructed, even if it has been laid out within the meaning of the statute. No time is prescribed by the statute within which the park must be constructed, and it cannot have been unintentional that the provision of the St. of 1871, *c.* 382, § 4, to the effect that no assessment for benefits shall be made until the work of laying out is completed, was omitted. The statute itself shows that it was drawn with the statutes then existing relating to betterments in mind. Its provisions in relation to betterments were largely taken from them. It might perhaps have been thought that none of the parks that would be located under the act could be constructed in two years. Whatever the reason may have been, the omission to require the park to be completed before an assessment could be made, cannot be treated as an accidental or unintentional omission. At the same time the limitation of two years was put in, which had been first inserted in the statutes relating to betterments in the St. of 1869, *c.* 367. The statute under consideration is in this respect different from the statute law as it ever before existed in this Commonwealth. Before the St. of 1869, *c.* 169, there was no provision in the statute that the assessment should be made after the work was completed, or within any limit of time ; this statute provided that

the assessment should not be made until the work had been completed, and the St. of 1869, *c.* 367, provided that the assessment should be laid within two years after the order for the laying out; and, since the passage of the last-named statute, the laying of the assessment for betterments in the laying out of ways has been subject to both these limitations. This court has never yet been called upon to construe a statute which required the assessment to be laid within two years after the passage of an order, except in connection with the other provision that the assessment shall not be made until the work is completed; and all the decisions of the court upon assessments for benefits under the early statutes, which imposed no limitation of time and no condition that the work should be completed before the assessments were made, are to the effect that the assessments may be made after the work is substantially completed, and need not be made at the same time as, or as a part of the order for, the laying out of the way. One reason, which has in some of the opinions been given why the order for the assessments need not be a part of the order for laying out, is, that it is impossible that the assessment could then be laid, because the actual expenses of construction could not then be known, and the assessment for benefits must be a proportional share of the expenses. It is however conceivable that the city of Boston might purchase a lot of land already fitted for use as a street, and lay it out as a street, and the whole cost of making it a street might be known at the time of laying out. The reason has not been given, that it was impossible to make the assessments for betterments at the time of the laying out of the highway because the whole amount of the benefits could not then be estimated, and this in the case of highways would not perhaps be a sound reason, because, from a time long before the passage of the first of these betterment acts, the statutes have required that the manner in which the highway should be constructed, and the time within which it should be completed, shall be specified in the return of the commissioners, so that it would appear in the proceedings for laying out a highway in what manner and when it must be constructed, and the whole benefits to be received from such a construction could in the nature of things be estimated. But there is no means of determining from the papers in this case in what manner or

when the park must be constructed, and there is no statutory standard for the construction of a park.

The papers in this case disclose more than one order. There is an order of the city council of July 23, 1877, authorizing the treasurer to borrow $450,000, " to be expended by the park commissioners in the purchase of not less than one hundred acres of land or flats " within an area that is there described by bounds; there is an order of the city council of December 24, 1877, by which the park commissioners are authorized " to complete the purchase of any part or parts of the said tract upon the terms provided in the said order, at such times as they shall deem expedient; " and there is an order of the city council, approved November 21, 1879, authorizing the park commissioners, so far as the consent of the city council may be necessary thereto, to exercise their power of taking land for the proposed park. And these are the three orders of the park commissioners which have been heretofore mentioned. It appears by the agreed facts, that at the date of the assessment of betterments the city of Boston had theretofore actually expended $439,690.90 in the purchase of different parcels of land for the park in different sums paid from December 29, 1877, to July 11, 1879, and had theretofore expended $111,763.16 for the filling, grading and surveying of the Back Bay Park. It is manifest that the park was in a general sense located, and some work done on its construction, before the passage of the formal order of December 27, 1879, laying out the park. By this order the land not already purchased within the boundaries described in the order was taken, so that by the terms of the act the fee vested in the city of Boston, (§ 6,) and the whole land so bounded was formally established and " created " as a public park. It is plain, as has been said, that the Legislature in this act did intentionally omit to require that the park should be fully completed before the assessment should be laid, and it is plain that it did not intend to leave the time for making the assessments indefinitely open; and it is also plain that it did not fully consider the difficulties which must arise in making an assessment, for benefits received from the locating and laying out of a park, before the park is constructed, when the manner in which it will or may be constructed, and the time within which it must be constructed, are neither prescribed

by statute nor required to be specified in any order of the city council or of the park commissioners.

But the difficulties of construing the act are not necessarily in the act itself, but in its application to the subject matter. If the act related to a highway, there would be no difficulty in its construction, under the fact found, that at the date of the assessment the expenses actually incurred exceeded the amount of the assessments. *Chase* v. *Aldermen of Springfield*, 119 Mass. 556. The two years after the passage of the order "the execution of which causes the benefit for which the assessment is made," would be reckoned from the passage of the order of laying out; and the most reasonable construction of this statute, we think, is that, as it is "the benefit and advantage from the locating and laying out of a park" which are to be considered in making an assessment, it is the order of laying out the park from the passage of which the two years, within which the assessment must be made, begin to run, and that the execution of this order causes the benefit for which the assessment is made. See St. 1871, c. 382, § 1; St. 1869, c. 367, § 1. Unless then we can say, as matter of law, that, under the facts of this case, there can be, from the locating and laying out of this park, in the manner in which they have been done, no benefit or advantage to the real estate to which the assessments apply, we cannot quash the order of assessment; and that we cannot say.

The question of benefit or no benefit, and of the amount of the benefit, if any, is a question of fact for the jury, if any person has been aggrieved by the assessment. It is useless here to consider the rules of law in accordance with which the amount of the benefit received must be determined by a jury of the Superior Court, in case any party aggrieved by this assessment shall make application to that court for a jury. If it be assumed, without consideration, that the benefits received must be confined to the benefits received from the park in the condition it was in at the time the assessments were made, and that no possible or probable future construction or improvement of the park can be considered, or if all the facts existing at the time the assessment was made that can actually affect the market value of land can be considered in estimating the benefits, in either case it is a question of fact for the jury whether any

benefit has been received. From the fact that the order of assessment was made the same day as the order of laying out, we can infer nothing in regard to the benefit received from the laying out. Land could be purchased or taken, and laid out as a park, from which benefit and advantage to real estate would be received immediately. The condition of this land, and its adaptability to confer benefit and advantage by being laid out as a park, do not appear upon the records of the proceedings of the board of park commissioners. They are facts in the country. Some of them have been agreed upon in this case, but, if they are competent, we cannot say, as matter of law, that it appears therefrom that no benefit has been received. This is a petition for a writ of certiorari to quash the proceedings of the board of park commissioners. A writ of certiorari lies only to correct errors in law, and no error in law appears in the record of the commissioners, and there are no provisions of the act that need be construed in any such manner as to render it unconstitutional. In the opinion of a majority of the court the

*Petition must be dismissed.*