BOSTON WATER POWER COMPANY & others *vs.* MAYOR AND CITY COUNCIL OF BOSTON.

Suffolk. Nov. 10, 1886. — Feb. 23, 1887. HOLMES & GARDNER, JJ., absent.

Under the St. of 1875, c. 185, authorizing the taking of land for a park in Boston, and the laying out and improvement of the same, and the assessment of betterments, and providing that there shall be no expenditure of money until an appropriation is made therefor by a vote of two thirds of each branch of the city council, and under the St. of 1886, c. 304, providing that the city council may, by a two-thirds vote, authorize the issue of bonds to the amount of $500,000 each year, and that, upon such vote being passed, the park commissioners appointed under the St. of 1875 shall proceed without delay to construct the park, the city council can alone determine what appropriations shall be made; and persons whose lands have been assessed for betterments, and whose lands are so situated that access cannot be had to them until the park is completed, cannot maintain a petition for a writ of mandamus to compel the city council to appropriate money to complete the park.

PETITION for a writ of mandamus, filed January 18, 1886, alleging the following facts:

By the St. of 1875, c. 185,* the city of Boston was authorized, upon the acceptance of said act by a majority of the legal voters

---

* By §§ 1, 2, the mayor of the city of Boston is required, with the approval of the city council, forthwith to appoint three commissioners, who shall constitute a board of park commissioners. The other sections material to the case are as follows:

" Section 3. Said board shall have power to locate, within the limits of the city of Boston, one or more public parks; and for that purpose, from time to time, to take in fee, by purchase or otherwise, any and all such lands as said board may deem desirable therefor; or to take bonds for the conveyance thereof to said city, to lay out, improve, govern, and regulate any such park or parks, and the use thereof; to make rules for the use and government

of said city, to appoint three park commissioners, who should constitute a board of park commissioners, and who should˙have power to locate within the limits of the city of Boston one or more public parks; and for that purpose, from time to time, to take in fee, by purchase or otherwise, any and all such lands as said board might deem advisable therefor, and to " lay out and improve " any such park or parks. This act was duly accepted by a majority of the legal voters of said city, and three park commissioners were duly appointed thereunder.

The board of park commissioners, claiming to act under the authority conferred upon them by the St. of 1875, *c.* 185, on December 27, 1879, passed an act or order locating and laying

---

thereof, and for breaches of such rules to affix penalties not exceeding twenty dollars for one offence, to be imposed by any court of competent jurisdiction ; to appoint all necessary engineers, surveyors, clerks, and other officers, including a police force to act in such parks; to define the powers and duties of such officers, and fix the amount of their compensation; and generally to do all needful acts for the proper execution of the powers and duties granted to, or imposed upon, said city, or said board, by this act: provided, however, that no land shall be taken, or other thing involving an expenditure of money done, until an appropriation, sufficient to cover the estimated expense thereof, shall have been made by a vote of two thirds of each branch of the city council of said city."

" Section 6. The fee of all lands taken or purchased by said board under this act shall vest in the city of Boston, and said city shall be liable to pay all damages assessed or determined, as provided in the preceding section, and all other costs and expenses incurred by said board in the execution of the powers vested in them by this act. . . . .

" Section 7. Any real estate in the city of Boston, which in the opinion of said board shall receive any benefit and advantage from the locating and laying out of a park under the provisions of this act, beyond the general advantages to all real estate in the city of Boston, may, after like notice to all parties interested as is provided by law, to be given by the street commissioners of the city of Boston in cases of laying out streets in said city, be assessed by said board for a proportionate share of the expense of such location and laying out: provided, that the entire amount so assessed upon any estate shall not exceed one half of the amount which said board shall adjudge to be the whole benefit received by it.

" Section 8. No assessment shall be made as provided in the preceding section except within two years after the passage of the order, the execution of which causes the benefit for which the assessment is made.

" Section 9. All assessments made under this act shall constitute a lien upon the real estate so assessed, to be enforced and collected by the city of Boston, in the same manner and with like charges for costs and interest as

out in the said city of Boston a public park, known as the Back
Bay park; and thereafter, on the same day, passed an order,
which, after reciting that, pursuant to an act of the board, a
public park was located and laid out in the city of Boston at
an estimated expense of $465,226.10, and that certain estates
named in a schedule referred to had been benefited by the loca-
tion or laying out of said park, and due notice had been given
of the intention of the board to assess betterments thereon, pro-
ceeded as follows : "Voted, that the estates named in the sched-
ule be, and they hereby are, respectively charged with the sums
therein severally set against them, such sums so assessed not
exceeding one half the amount of the adjudged benefit to the
estates by the said location and laying out."

The petitioners furnished about seventy-five per cent of the
lands taken for said park, for which they were paid by the city
of Boston the nominal price of ten cents per square foot.

The petitioners are also owners of parcels of land, named in
said schedule, upon which betterments were assessed, and, ex-
cept one, have paid or settled for such betterments.

Said park consists of about one hundred and six acres, and is
located in said city of Boston, within the area bounded by the
Charles River, West Chester Park, Huntington Avenue, Long-
wood Avenue, and Brookline Avenue, with entrances from
Beacon Street, from West. Chester Park, from Boylston Street,

---

is provided by law for the collection of taxes; and such assessments may be
apportioned by said board in like manner as assessments for benefits caused
by the  laying out of ways may now be apportioned by the street commis-
sioners of said city."

" Section 12.   For the purpose of defraying the expenses incurred under
the provisions of this act, the city council of Boston shall have authority
to issue, from time to time, and to an amount not exceeding the amount
actually expended for the purchase or taking of lands for said parks, bonds
or certificates of debt, to be denominated, on the face thereof, the ' Public
Park Loan,' and to bear interest at a rate not exceeding six per centum per
annum, and to be payable at such periods as said council may determine.
For the redemption of such loan said council shall establish a sinking fund
sufficient, with the accumulating interest, to provide for its payment at
maturity.   All sums received for betterments shall be paid into said sinking
fund, until such fund shall amount to a sum sufficient, with its accumula-
tion, to pay at maturity the bonds for the security of which the fund was
established."

from Westland Avenue, from Huntington Avenue, from Longwood Avenue, and from Brookline Avenue.

The board of park commissioners have adopted a plan for the construction and improvement of said park, which, in general, provides for graded and macadamized driveways over said six entrances, which are to be ornamented and broken up with waterways, and with enclosures for grass, flowers, and shrubs, and the whole park is to be surrounded by broad carriageways and footways, with a bridge over the Muddy River entrance; and the interior is to be about one half of water and one half of level areas, to be suitably filled, levelled, and seeded, while the interior slopes are to be graded, seeded, and set out with trees, shrubs, and flowers; and, in addition, there is to be a roadway over the centre of the park, with a large bridge arching the waterway.

Of these improvements, said drive, carriage, and foot ways have in no manner been graded, and, for about three fourths of the distance, are below grade, with large amounts of filling yet to be done, with rough and broken surface, with piles of stone scattered about, and with about one half of the whole of said carriageway rendered utterly impassable because covered with material brought from Sudbury River for grading the slopes, piled up to a height of from four to ten feet. The entrance of Muddy River to the park has not been filled or bridged, and on a large portion of said drive, carriage, and foot ways, by which alone access is to be had to the land of the petitioners, substantially nothing has been done for the past three years.

Of the slopes on the interior of said park, only about one fourth have been completed, but upon the greater portion no work has been done. Of the level areas of land within the park, only about six or eight acres have been levelled and graded, and on the forty or fifty acres remaining very little has been done. Of the dredging for waterways within the park, about one half has been done. Of the filling required for the roadway dividing the park, about one third has been done.

The lands of the petitioners have been greatly reduced in area by reason of the large number of acres taken for said park, and, in consequence thereof, their remaining lands are to a large extent bordering on said park and its approaches, and are

dependent upon the completion of said park for access, sale, and utilization; and more especially are they so dependent, for the reason that buildings for dwellings and other purposes are to be erected around said park and entrances, to which access can alone be had by the use of said carriage and road ways.

Up to the present time, taken as a whole, the location and laying out of said park have been an injury rather than a benefit to the lands of the petitioners, although they have paid to the city of Boston, for betterments and increased taxes assessed on account of said park, very large sums of money.

The city council of the city of Boston for the year 1885 appropriated for said park only the sum of $45,000, and, with the present progress in the construction of said park, it will take from ten to twelve years to complete the same.

To complete the park according to the design adopted by the park commissioners will cost, in addition to what has already been expended, about $500,000, not including the proposed macadamizing of the roadways. There has been expended up to December 1, 1884, in the purchase of land for the park, $459,360.42, and for construction, $1,019,652.63. It is contended by the park commissioners, in their last annual report, that the city has received up to December 31, 1884, from the petitioners and other tax-payers, from increased taxes and betterments by reason of the locating and laying out of said park, the sum of $1,508,736.92. The appropriation for each year has been as follows: 1877–78, $450,000; 1879, $120,000; 1880, $214,000; 1881, $202,000; 1882, $200,000; 1883, $100,000; 1884, $150,000; 1885, $45,000.

The petition further alleged, that, the park commissioners, having with due authority located and laid out said park over large areas of mud flats and marshes, and having adopted a plan for the construction and improvement of the same, and the petitioners having paid large sums of money for betterments and increased taxes because of the alleged benefits to their lands by reason of the locating and laying out of said park, there was an obligation and duty on the part of the said mayor and city council at once to appropriate the money necessary properly to construct, improve, and complete the same; that said mayor and city council had delayed unreasonably to make appropriation

for the construction, improvement, and completion of said park, and had refused and neglected to make sufficient appropriation therefor, to the great loss, detriment, and injury of the petitioners; and "that the debt limit, as provided by law, of the city of Boston, will in all probability be reached the present year, when your petitioners fear that the mayor and city council will then claim that they have no power or means to complete said park."

The prayer of the petition was, that a writ of mandamus issue, directed to the mayor and city council of the city of Boston, commanding them at once to appropriate sufficient money for the completion of the public park on the Back Bay in the city of Boston, located and laid out by the said board of park commissioners on December 27, 1879, according to the plan or plans which they have adopted for the construction, improvement, and completion of said park.

The respondents filed a demurrer to the petition, assigning the following causes of demurrer: "1. That the petition does not state any cause or ground for the issuing of a writ of mandamus as prayed for. 2. That the petition does not show any failure on the part of the respondents to perform any part of their official or municipal duties. 3. That this court will not and should not assume to control the respondents in the exercise of the discretion by law imposed upon and vested in them in regard to the appropriation of moneys for municipal purposes."

On September 9, 1886, the petitioners filed a supplemental petition, alleging the following facts:

The mayor and city council of the city of Boston, in making the annual appropriations for the current year, omitted to make any appropriations for the construction or completion of said public park on the Back Bay of the city of Boston, or of any public park authorized by the St. of 1875, *c.* 185, in said city, and only appropriated a sum sufficient to pay the office expenses of said park commissioners, namely, the sum of $10,000; that during the current year no work of construction has been done on the public park on said Back Bay, or on any of the public parks in said city, authorized by the St. of 1875, *c.* 185; and that the condition of the lands of the petitioners, and the work,

streets, and park area of the said public park on the Back Bay, remain the same as they were at the time of the filing of said petition.

The mayor and city council of the city of Boston made request to the Legislature of this Commonwealth, sitting for the current year, for the passage of an act authorizing the city of Boston to borrow money for the construction of its public parks; and said Legislature, in accordance with said request, passed an act to authorize a loan for the construction of public parks in or near the city of Boston, being the St. of 1886, c. 304, which was approved June 21, 1886, and which provided as follows:

"Section 1. For the purpose of defraying the costs and expenses of constructing the parks established by the city of Boston, the city council of said city may, by a vote passed in the manner provided by section 7 of chapter 29 of the Public Statutes, authorize its treasurer to issue, from time to time, to the amount of five hundred thousand dollars each year, and to a total amount not exceeding two million five hundred thousand dollars, negotiable bonds or certificates of indebtedness, payable in not exceeding fifty years from their date and bearing interest at a rate not exceeding four per cent per annum, to be denominated on the face thereof Public Park Construction Loan.

"Section 2. Said treasurer shall sell said bonds and certificates, or any part thereof, from time to time, and retain the proceeds thereof in the treasury of the said city, and pay therefrom the expenses incurred for the purposes aforesaid.

"Section 3. Upon the passage of the said vote the board of park commissioners of said city shall without delay proceed with the construction of said parks, and shall carefully and judiciously expend the amounts aforesaid in such construction.

"Section 4. The debt and loans authorized by this act shall not be included within the limits fixed by section 2 of chapter 178 of the acts of the year 1885.

"Section 5. This act shall take effect upon its passage."

Although said act was approved on June 21, 1886, and the city council of Boston have had several meetings since that time, they have wholly neglected and failed, and unless commanded by this honorable court the petitioners believe will continue to neglect and fail, to authorize the loan as provided in said act, or

to appropriate money or authorize the borrowing of any money the current year for the construction of the public park on said Back Bay, or any of the public parks of said city.

The respondents filed a demurrer to the supplemental petition assigning the same causes of demurrer as are contained in the demurrer to the original petition.

The case was reserved, on the pleadings, by *W. Allen,* J., for the consideration of the full court.

*G. F. Richardson & H. D. Hyde, (A. D. Foster* with them,) for the petitioners.

*A. J. Bailey,* for the respondents.

C. ALLEN, J. In *Foster* v. *Park Commissioners,* 133 Mass. 321, 334, the question was suggested, but it was unnecessary then to determine it, whether, if the city council should refuse or neglect to make sufficient appropriations for the construction of the park contemplated in the St. of 1875, *c.* 185, a writ of mandamus would issue to compel them to do so, as in the case of a neglect or refusal to construct a way lawfully laid out. That question is now directly presented for our decision.

There is in the statute no provision which is in terms mandatory upon the city council, except in the first instance, where the appointment of park commissioners is made compulsory. The performance of the duties of the park commissioners is made subject to the provision, in § 3, " that no land shall be taken, or other thing involving an expenditure of money done, until an appropriation, sufficient to cover the estimated expense thereof, shall have been made by a vote of two thirds of each branch of the city council." And, in § 12, it is enacted that, for the purpose of defraying the expenses incurred under the provisions of the act, the city council shall have authority to issue, from time to time, and to an amount not exceeding the amount actually expended for the purchase or taking of lands for said park, bonds or certificates of debt. There is thus an implied authority, in § 3, to make appropriations for improving the park, and, in § 12, there is an express authority to issue bonds to an amount not exceeding the amount actually expended for the purchase or taking of lands. But there is nothing mandatory, and this omission appears to have been intentional. It was the purpose of the statute to leave it to

the determination of the city council how fast to proceed. Independently of any consideration of the limit of municipal indebtedness fixed by law, it is a matter naturally and properly confided to the city council to weigh the relative importance of different public improvements and objects calling for large expenditures of money, and to determine how much shall be devoted to each in any year. In the case of ways, the duty of proceeding with the construction of such as have been duly established is an absolute one, fixed by statute, and the court can enforce it accordingly. Pub. Sts. *c.* 49, § 60. *Richards* v. *County Commissioners*, 120 Mass. 401. The absence of any similar provision in the statute providing for the park is significant to show that no such compulsory action was contemplated.

But it is urged upon us that the statute contemplates that the city council shall proceed with reasonable speed, and that an unreasonable delay is charged by the petition for a writ of mandamus, and admitted by the demurrer. The answer to this is, that under the statute the determination of the city council as to what is reasonable speed is final. Otherwise, upon a dispute whether the city council was proceeding with reasonable speed or not, this court would have to sit in judgment upon its discretion, and, in fact, to revise and superintend all its expenditures. There is no suggestion that the scheme has been abandoned by the city council.

This result is especially clear, in view of the law, as it stood at the time the petition was brought, respecting the limit of municipal indebtedness. The petition avers that "the debt limit, as provided by law, of the city of Boston, will in all probability be reached the present year, when your petitioners fear that the mayor and city council will then claim that they have no power or means to complete said park." This is in effect an averment that probably the city council will use all available means at its disposal for objects deemed by it to be more pressing than the park; and there is no averment to the effect that such objects are not in fact more pressing, having reference to the public needs. But suppose there were such an averment; the petition still is in effect a request that the court will decide that the park is a more pressing object than the others to which the city council will probably devote the money. It cannot be

that the Legislature intended that this court should enter upon such an inquiry, and compel the city of Boston to administer its fiscal affairs under the direction of the court.

It was suggested by the petitioners, that the payment by them of the assessments levied upon them for betterments gives them a right to insist upon the speedy completion of the park. But it has never been determined, and it does not now appear, that these assessments were levied with reference to the condition of the park as it would be in the future. Moreover, if it were so, it must also be borne in mind that no rule or standard was prescribed by the statute as to the manner in which the park should be constructed, and no time was fixed within which it must be finished. The assessments, even though it be assumed that they were levied and paid under an expectation of the benefits to be derived from a completed park, do not give to the petitioners a legal right to supersede and control the discretion of the city council and park commissioners as to the time and manner of completing it.

The supplemental petition sets out that, by virtue of the St. of 1886, *c.* 304, the city council may authorize its treasurer from time to time to issue bonds for the construction of the park, which shall not be included within the limit of municipal indebtedness. This act removes the difficulty which otherwise the city council might find itself under, by reason of the statute's limiting the amount of municipal indebtedness; but there is nothing mandatory in it. The vote of the city council to this effect must be passed in the manner provided by the Pub. Sts. *c.* 29, § 7, that is, by two thirds of all the members of each branch of the city council, taken by yeas and nays, and approved by the mayor; or, if he disapprove such vote, by another like vote, taken after notice of such disapproval. All this clearly contemplates a discretionary, and not a compulsory, action on the part of the city council. It was not intended that this court should have power to order two thirds of all the members of each branch of the city council to vote by yeas and nays to authorize the city treasurer to issue bonds of the city, in spite of the disapproval of the mayor. The St. of 1886 imposes upon the city council no new duty which can be enforced by a writ of mandamus.                    *Petition dismissed.*