STATE ex rel. REYNOLDS vs. BABCOCK.

HIGHWAYS: ENCROACHMENT. *(1) When penalty recoverable for encroachment. (2, 3) When highway " laid out." (4) Description of highway in commissioners' certificate. (5) Presumption as to record. (6) Effect of denying legal highway, without denying encroachment. (7, 8) Immaterial errors in proceedings for penalty. (9) Tenants in common, maintaining obstruction, liable severally. (10) Description of encroachment in supervisors' order of removal.*
REVERSAL OF JUDGMENT: *(11) As not supported by evidence; Bill of Exceptions.*

1. The penalty prescribed by secs. 103, 106, ch. 19, R. S. (Tay. Stats., 508, §§ 139, 142), for encroaching upon a highway, can be recovered only where the alleged highway has been "laid out and opened." *State v. Huck*, 29 Wis., 202.

2. *Quære*, whether the phrase "laid out," as used in the statute, does not comprehend every act by which the public acquire the right of way in lands.

3. Under the laws in force in 1846, when the proper commissioners had determined to lay out a highway between two points, and had made out and subscribed a certificate of such determination, describing the road by metes and bounds and by its courses and distances (Township Act of 1841, p. 59, § 10; Laws of 1843, p. 47, § 7), and had taken the proper steps to give validity to such order, the road was "laid out," within the meaning of the statute; and it was not necessary that the certificate should recite any determination by the commissioners that the proposed highway was necessary or required for the public convenience, or should state any reason for laying it out.

4. Where such a certificate states the point of commencement, bearings and distances of the proposed highway, and its *width*, and that it shall *run*

State ex rel. Reynolds vs. Babcock.

*on* a certain quarter-section line, it must be assumed that the latter is the *center* line; and the description is sufficient.

5. In the copy of such an order or certificate found in the record, the specification of the width appears to have been written to the left of, and a little below, the signature of the commissioners, but above the town clerk's entry thereon of the date of recording. *Held*, that, in the absence of evidence to the contrary, it must be presumed to have been a part of the commissioners' order.

6. Where the town supervisors make an order (under sec. 102, ch. 152, Laws of 1869; Tay. Stats., 508, § 138) requiring the removal of a fence or other fixture as an obstruction to a highway, if the occupant of the land, upon whom the order is served, does not deny that such fixture encroaches upon the *locus* described in such order and claimed as a highway, but merely denies that such *locus* is a highway, he becomes liable to the penalty prescribed by sec. 103 of said act (Tay. Stats., 508, § 139), upon failure to remove the obstruction within thirty days after service of the order, in case the land is a highway in fact, laid out and opened as such within the meaning of the statute; and it is not necessary to summon the special jury provided for by sec. 104 of the act (Tay. Stats., 508, § 140), such jury having no jurisdiction to try the question whether the land is a highway.

7. Where, however, in such a case, a special jury was summoned, and found that an encroachment had been made as claimed by the supervisors, and the occupant failed to remove the obstruction within thirty days after the due filing of the certificate of such finding, and this action for the penalty was brought for such failure, in form under sec. 106: *Held*, that the defendant could not complain that the action was brought under that section instead of sec. 103 (the penalty being the same sum per day, and for a less number of days); and the variance between pleading and proof will be disregarded after verdict, especially as the objection was not taken at the trial.

8. No special jury having been necessary in this case, questions relating to the sufficiency of the certificate of such jury are immaterial.

9. Torts are always several, whatever number of persons unite in committing them; and though defendant and one O. were named together in the order of the supervisors as having encroached upon the highway, it was not error to reject evidence offered by defendant that he and O. occupied in common the land to which the obstruction was appurtenant.

10. Defendant's land lay west of the quarter-section line on which the highway was laid out. The order of the supervisors for the removal of the alleged obstruction, specifies that the highway is encroached upon *on the west side* thereof, along lands in the occupation of defendant and O., by a rail fence which forms a part of the inclosure of said lands; that the

west line of the highway is a line parallel to and one and one-half rods west of the quarter line; and that the highway is three rods wide. The evidence tended to prove that a portion of defendant's fence was *east* of the quarter line. *Held*, that the order sufficiently describes the encroachment, and is not limited by its terms to an encroachment *upon or west of* the quarter line.

11. A judgment will not be reversed on the ground that the instructions and verdict are not supported by the evidence, where the bill of exceptions is not certified to contain all the evidence bearing on the questions in dispute.

APPEAL from the Circuit Court for *Walworth* County.

This action was brought to recover a penalty which the complaint alleges the defendant became liable to pay under sec. 106, ch. 152, Laws of 1869, for failing to remove encroachments from a highway in the town of Troy, in Walworth county, within thirty days after the filing with the proper town clerk of the certificate of a jury finding such encroachment. The answer "denies that there is any legal road or highway at the place where it is alleged in said complaint to be encroached upon as a highway," and alleges defendant's ownership and possession of the *locus in quo* for more than one year before the action was commenced.

On the trial, plaintiff introduced in evidence an order of the commissioners of highways of Troy, purporting to lay out a highway between two designated points in that town, in part on a certain north and south quarter-section line, a portion of which line is the east line of defendant's farm. This order was recorded in the office of the town clerk under date March 23, 1846. It is therein recited that the action of the commissioners was had February 26, 1846. It was also proved on plaintiff's behalf, that defendant maintained a fence on or near said quarter line, along the east line of his farm; and it was admitted that a strip of land about two rods wide east of and adjoining such fence had been used as a highway from the time such order was made, and was, in fact, a public highway by user. The testimony tended to show that defendant had

rebuilt his fence about two years before the trial, and that a portion of the new fence was east of such quarter-section line.

For the plaintiff there was also introduced in evidence, 1. An order of the supervisors of Troy, dated December 15, 1873, requiring defendant to move his fence. This order re-cites that the supervisors have ascertained "that the public highway in said town leading from Pierce's mill north to the quarter-line road,* is encroached upon on the west side thereof, along lands in the occupation of *George Babcock* and M. A. Odell, by a rail fence by the present occupants thereof, which forms a part of the inclosure of said lands;" and also that they have "ascertained the westerly bounds and limits thereof to be upon and according to the following line: Commencing in the center of the Racine and Madison territorial road, known as the quarter-line road, one and one-half rods west of the center of section twenty-four, and running thence south, parallel with, and one and one-half rods distant from the center line running north and south through sections twenty-four and twenty-five, to the center of the Milwaukee and Be-loit territorial road." The order then declares: "All that narrow strip or piece of land which lies under said rail fence, and between said rail fence and the line above described, is a part of the public highway aforesaid. It is therefore ordered * * * that said rail fence be removed so that the said high-way be open and unobstructed and of the width originally laid out, which was three rods, within thirty days from the service of this order." 2. A denial in writing served by the defend-ant upon the supervisors. In this paper, after admitting ser-vice of the foregoing order, defendant "denies that there is any such highway as therein alleged, and alleges on his part that so much of the alleged highway as lies within the inclos-ure made by said fence," is his soil and freehold, and as such

---

* This is not the quarter-line road elsewhere mentioned in this order and in this case as the eastern boundary of defendant's land, but is an east and west road at some distance north of the defendant's premises. — REP.

occupied by him as of right.   3. Proceedings to select and summon a special jury pursuant to secs. 104 and 105, ch. 152, Laws of 1869.   4. The certificate of such jury, duly filed in the town clerk's office.   It certifies that an encroachment, such as is specified in the foregoing order, has been made by M. A. Odell and *George Babcock;* and, "for the purpose of specifying the particulars of such encroachment," it further certifies, in substance, that the westerly boundary of said highway along the said encroachment was one and one-half rods west from and parallel with the quarter-section line running north and south through sections twenty-four and twenty-five, "and that the rail fence along the lands in the occupation of the said M. A. Odell and *George Babcock* and westerly of said line, is upon the said highway, and an encroachment thereon; and that the narrow piece of land under and between said rail fence and one and one-half rods west of the line above described, is a part of the said public highway."

The defendant introduced testimony tending to show that the highway was originally laid across his farm without the consent of the then owner, and without notice, and that no damages were ever awarded to or released by such owner; and further, that the highway had never been opened across his land, and that he had not encroached upon that part of it which had become a highway by user.

It is not certified that the bill of exceptions contains all the evidence.

The following instructions, given to the jury, were excepted to by the defendant: 1. "If you find that the premises had been used continuously and uninterruptedly as a public highway for twenty years, such use is conclusive in favor of the public that it is a highway."   2. "If you find that said highway was laid out by the commissioners of highways, and opened twenty years or more prior to the time when the alleged obstruction was placed within it, and that the same has been, for that period, by the consent or acquiescence of

the owners of the adjoining lands, continuously and uninterruptedly used by the public as a highway, you may regard it as a legal highway, so far as it was so opened and used."
3. "If you find that the highway in question was laid out and opened by the proper authorities, and that defendant has encroached upon it, or upon such part of it as was laid out and opened, by placing his fence or any part of his fence thereon, your verdict will be for the plaintiff."

The following instructions, asked by defendant, were refused: 4. That as to defendant's lands here in question, said highway was not legally laid, and there had been no encroachment thereon. 6. That so much of said alleged highway as was upon the lands occupied by defendant, had never been legally opened. 8. That if the highway was not legally laid as to said lands, then it was not legal as to lands adjoining on the east, because the commissioners had no power to lay a road one and a half rods wide. 9. That if defendant had built his fence on what he believed to be the [quarter-section] line, using due care to ascertain it, he was not liable because it might prove that the fence varied a trifling distance from such line; the order and special verdict defining the encroachment, not specifying or giving defendant notice that any *such* encroachment was claimed. 13. That if there was no part of a legal highway west of the old fence, defendant had a right, for the purposes of this suit, to put his fence on the quarter-section line, and upon the line of the old fence. 14. That if the center of defendant's fence was on, or as nearly as practicable on, the line of the quarter section and of the old fence, and if the projection of the new fence beyond that line was the only encroachment, then plaintiff could not recover. 15. That if the certificate of the special jury, by claiming an encroachment one and a half rods wide, did not inform, and was not sufficient to inform, defendant with reasonable certainty that the encroachment claimed was only a projection of the corners of his fence and the stakes of the same over defendant's line,

then the state could not recover the penalty asked for an encroachment of the kind last described.

Verdict for the plaintiff, assessing the penalty at fifty dollars; new trial denied; and appeal by the defendant from a judgment on the verdict.

The cause was submitted for the appellant on a brief signed by *H. S. Winsor* as his attorney, and by *Fuller & Harkness*, of counsel. They contended, among other things, 1. That the court erred in admitting the record of the order purporting to lay out the highway. That order describes a line only, and does not describe the boundaries of the highway. The note at the bottom " N. B. The width of this road was established at three rods," is clearly no part of the order, but a subsequent memorandum. Whoever made it, spoke of a past transaction: " the width *was* established." The words, " ordered to be put on record by," immediately followed by the signatures of the commissioners, show that the order was completed and signed by them without that note. Had the omission been suggested to the commissioners before they separated, the correction would have been made by interlineation, and the record of the order would not have shown it. Both from the situation and the wording of this addition, it is presumptively a note added by some other person. The statute (act of 1843, pp. 46–7, secs. 2, 7) contemplates that the order shall be filed in the town clerk's office immediately. This order remained in some one's possession nearly a month. Under such circumstances, plaintiff should have introduced testimony explaining the addition. Moreover, if this note can be deemed a part of the order, it does not aid the survey, because there is nothing in the order to show whether the line there described is the center, or the east or the west boundary of the road. Moreover, the act of 1843, p. 47, § 7, requires an adjudication by the commissioners that the highway is *necessary;* and the order should have recited such a determination. 2. That the court erred in excluding the question put to de-

fendant as to whether he and Odell ever owned or occupied any lands in common. The order of the supervisors and the certificate of the jury both define the encroachment as *made by these persons*, along lands *occupied by them*, and they are directed to move back their fence for a distance of over seventy rods further south than defendant's land extends. This was not defining the particulars of an encroachment *made by defendant*. 3. That the court erred in instructing the jury that if the premises had been used continuously as a public highway for twenty years, such use was conclusive in favor of the public that it was a highway. This action can be maintained only where there is a highway *laid out and opened*. R. S., ch. 19, sec. 102; *Soule v. State*, 19 Wis., 593; *Doughty v. Brill*, 3 Keyes, 612. It can be maintained only where there is a *record* fixing the boundaries of the highway. Neither the supervisors nor the special jury have power to take proof of user, and from such proof fix the boundary and determine the encroachment. *Talmadge v. Huntting*, 29 N. Y., 447. 4. That the burden of proof was on plaintiff to show that a highway had been *opened* on defendant's land; that there was no evidence of that fact, but the uncontradicted testimony showed that the road west of the quarter line had never been opened on said land; and that the court therefore erred in refusing so to instruct the jury at defendant's request. 5. That the court erred in refusing the eighth instruction asked by defendant, that if the highway was not legally laid as to *his* lands, then it was not legal as to lands adjoining on the east, because the commissioners had no power to lay a road one and a half rods wide. 6. That the court erred in refusing the ninth, thirteenth, fourteenth and fifteenth instructions asked by the defendant. There was a conflict in the testimony as to whether the new fence extended further east than the old one; and it was apparent that if it did, it was only a trifling distance at the corners. These were questions of fact for the jury. If they had found that the new fence, at the corners, had a slight

extension eastward beyond the old, the action could not be sustained. If any boundary by record had been shown, it was one and one-half rods west of the quarter line. The evidence also showed that that rod and a half had never been opened (nor in fact legally laid) as a part of a highway; consequently, there could be no encroachment on land west of the fence, nor on land under the old fence. The width and boundaries of the highway on which defendant was guilty of an encroachment (on the suppositions stated in these instructions) were established only by parol evidence of user, which is not sufficient to sustain this action. Moreover, the whole basis of the action is the order of the supervisors and the certificate of the special jury, finding and defining the encroachment; and such encroachment must be described with "reasonable certainty," and the "particulars" given, so that the defendant can "obey the order and know when he has performed his duty." R. S., ch. 19, secs. 102, 106; *Spicer v. Slade*, 9 Johns., 359; *Fitch v. Comm'rs*, 22 Wend., 132; *Mott v. Comm'rs*, 2 Hill, 472. Defendant had notice that one and a half rods in width of his land was claimed as a highway, and this claim he was ready to contest; but he had no notice that a technical encroachment was claimed, arising out of the erection of his new fence.

The cause was submitted for the respondent on the brief of *H. F. Smith*, who contended, 1. That the order laying out the road, the order of the supervisors in reference to the encroachment, and the certificate of the special jury on that subject, were sufficient, and were properly admitted in evidence. R. S., ch. 19, secs. 59, 102, 105-6. 2. That the instruction given to the jury, to the effect that "if the premises had been used uninterruptedly as a public highway for twenty years, such use was conclusive in favor of the public that it was a highway," was correct. *Hanson v. Taylor*, 23 Wis., 547-8. The evidence showed the use by the public for more than twenty years, acquiesced in during all that time by the several owners of the land to the extent of such use. It also

showed that the road had previously been laid out and opened. 3. That if the legal existence of the highway had been admitted, the order of the supervisors and the verdict of the special jury would have been conclusive of the fact of encroachment. *Soule v. The State*, 19 Wis., 593; *Fleet v. Youngs*, 7 Wend., 291; *Whiting v. Dudley*, 19 id., 373. 4. That as the existence of the highway was not admitted in this case, evidence was given tending to prove a legal highway, and the question submitted to the jury under proper instructions; and, the highway being established by their verdict, the order of the supervisors and the verdict of the special jury are as conclusive of the fact of encroachment and its extent as they would have been if the highway had been admitted. 5. That if there was a legal highway of *any width* or length, which had been laid out, opened and used, and that highway was encroached upon by defendant, the supervisors had *jurisdiction*, under the statute, to determine the extent of such encroachment and order its removal. And if, having jurisdiction, they ordered the removal of the fence farther to the west than they were really authorized to do, the order was *not void;* and in this case the order and certificate are conclusive. 6. That if there was no highway over *defendant's land*, he had no right to encroach upon a highway *alongside of his land;* and if he made any such encroachment, even to the smallest extent, he thereby subjected himself to the statutory proceedings for its removal. If he desired to avoid the penalty, he should at least have removed back his fence so that no part of it should have projected beyond his line. 7. That " as the bill of exceptions does not purport to contain all the evidence given on the trial, we must assume that the state of the proofs was such as to render the instructions given proper and pertinent, and to show that those asked and refused would have been improper." *Kelley v. Kelley*, 20 Wis., 443, 446; 7 id., 185.

Lyon, J. There is no denial in the answer that the *locus*

claimed to be a highway was encroached upon by the defendant, but only a denial that the same is a highway. Hence, the controlling questions are: Had a highway previously been laid out and opened where the encroachments were placed or maintained by the defendant? And, if so, were such proceedings had as to render the defendant liable to the penalty imposed by the statute?

The highway must have been "laid out and opened," to render the defendant liable to a penalty for encroaching upon it. R. S., ch. 19, secs. 102–106 (Tay. Stats., 508, §§ 138–142); *State v. Huck*, 29 Wis., 202. It is quite probable that the term "laid out," as employed in the statute, is sufficiently comprehensive to include any act or process by which the public obtains the right of way in lands, whether it be by act of the legislature, by order of the board of county supervisors, or town supervisors, by grant, by dedication, or otherwise. But, be this as it may, the most narrow signification that can reasonably be given to the term is to restrict it to highways laid out by order of the public authorities.

It is claimed, however, on behalf of the defendant, that the order of the highway commissioners of the town of Troy purporting to lay out the highway in question is void on its face, for the alleged reasons, that it does not recite or show any adjudication or determination by the commissioners that the proposed highway was necessary or required for the public convenience, or state any reason for laying out the same; and because it does not specify the width of the highway. All that the statute then in force required was, that if the commissioners determined to lay out the highway, they should "make out and subscribe a certificate of such determination, describing the road so laid out particularly by metes and bounds and by its courses and distances." Township Act of 1841, p. 59, § 10; Laws of 1843, p. 47, § 7. The order or certificate of March 23, 1846, substantially meets this requirement of the statute. It properly describes a line of the highway which is

the quarter-section line where it passes the defendant's farm. We must take this line to be the center of the highway, and it specifies the width of the road to be three rods. This last specification appears in the copy of the order in the record to have been written to the left of and a little below the signature of the commissioners, but above the town clerk's entry thereon of the date of recording. We must presume, in the absence of proof to the contrary, that it is a part of the commissioners' order.

In respect to the attempt to show the order void for defects in the proceedings — as want of notice to the owner, the non-consent of the owner, the failure to award damages, and the like — it is only necessary to observe that the bill of exceptions is not certified to contain all of the testimony; and, in the absence of such certificate, we must presume, in support of the verdict, that there was sufficient evidence to warrant the jury in finding that all the requirements of law in respect to those matters were fully complied with.

On the same principle and for the same reason, it must be presumed that the portion of the highway on the defendant's farm had been lawfully opened to the public use.

We conclude, therefore, that the record before us, aided by inevitable legal presumption, shows that the defendant maintained an encroachment in and upon a public highway which had been theretofore "laid out and opened." It remains to be considered whether such proceedings were had in the premises as to render him liable for the penalty imposed by the statute.

The town supervisors made an order pursuant to sec. 102, *supra*, requiring the defendant to remove his fence (which is the encroachment complained of), in thirty days from the service of the order, and caused the order to be served on the defendant. The defendant thereupon served upon the supervisors a denial that the public had a right of way there, but he did not deny the encroachment if there should prove to be a

highway where his fence stood.   Neither the supervisors nor the special jury had jurisdiction to determine whether the *locus in quo* was or was not a legal highway.   *Soule v. The State*, 19 Wis., 593.   We see no fault in the order of the supervisors requiring him to remove the encroachment; and we think there was no sufficient denial of the encroachment to make it necessary to summon a special jury.   It seems to us that the failure of the defendant to comply with the order last mentioned rendered him liable to the penalty inflicted by sec. 103, without regard to the action of the jury.   He cannot justly complain, however, that the action was brought under sec. 106, for that is most favorable to him — the penalty per day being the same, but the number of days for which he was liable to such penalty being less.   True, the action is brought in form under sec. 106, but the gist of it is the maintenance of an unlawful encroachment in the highway after he had been required by lawful authority to remove the same; and we think that the variance is quite immaterial, and may be disregarded after verdict, especially as the objection was not taken at the trial.

Two persons are named in the order of the supervisors — the defendant and one Odell — as having encroached upon the highway.   The defendant, when on the stand as a witness, was asked in his own behalf, whether he and Odell ever occupied any lands in common.   The offered testimony was rejected, and this ruling is assigned as error.   This action sounds in tort, and torts are always several, no matter how many persons unite in committing them.   If the encroachment was maintained by the defendant alone, he is liable, although it is charged that Odell was a party thereto; and if by both jointly, either is liable in a separate action for the penalty.   Hence the answer to the question must have been immaterial, and it was not error to reject it.

It follows from the foregoing views, that there was no material error in admitting in evidence the records in the town clerk's office of the laying out of the highway, and those re-

lating to the encroachment complained of. It also follows that the judgment appealed from must be affirmed, unless there is some error fatal thereto in the instructions given to the jury, or in the refusal of the court to give certain instructions proposed on behalf of the defendant. These will now be considered.

Some of the proposed instructions which the court refused to give, relate to the sufficiency of the certificate of the special jury. We have already seen that such certificate is of no importance in the case, because the encroachment was not denied, and hence there was no necessity for calling a jury; and it is quite immaterial whether their certificate would or would not have been sufficient had the case required that proceeding.

Another instruction asked on behalf of the defendant, and refused, is to the effect that the order of the supervisors requiring him to remove the encroachment does not sufficiently define an encroachment east of the quarter line. Other instructions were, in like manner, asked and refused, to the effect that the defendant could only be held liable for an encroachment on the quarter-section line and west of it, and not for an encroachment east of that line. It will be remembered that the evidence tended to prove that some portion of the defendant's fence was east of that line. We think all of the instructions prayed on that subject were properly refused. The order of the supervisors specifies that the highway "is encroached upon on the west side thereof along lands in the occupation of *George Babcock* and M. A. Odell, by a rail fence by the present occupants thereof, which forms a part of the inclosure of said lands." It then specifies that the west line of the highway is a line parallel to, and one and one-half rods west of, the quarter line, and that the highway is three rods wide. We do not perceive how the encroachment could have been more particularly specified, and we find nothing in the order which limits the encroachment to that portion of the highway lying west of the quarter-section line. It may also be remarked that

the certificate of the special jury specifies the encroachment substantially in the same manner.

The court was further requested to instruct the jury that the alleged highway was not legally laid over the defendant's land; also that it had never been opened through his land. We cannot say whether these instructions should have been given, or whether they were properly refused. To determine that, we should have all the evidence before us. As before observed, in the absence of a certificate that the bill of exceptions contains all of the evidence introduced on the trial, we must presume, in support of the rulings of the court in that behalf, that there was testimony which justified the court in refusing to give the instructions.

It is believed that these observations dispose of all the errors assigned upon the refusal of the court to give the instructions proposed on behalf of the defendant. Concerning the instructions which the court gave the jury, it is only necessary to say that we find nothing therein to which exception was taken, which conflicts with the views above expressed.

*By the Court.* — The judgment of the circuit court is affirmed.