## Richmond.

### CITY OF RICHMOND V. SUPERVISORS OF HENRICO COUNTY.

#### APRIL 21st, 1887.

1. MUNICIPAL CORPORATIONS— *Hospital — Establishment.*—A municipal government "establishes" a hospital by purchasing, according to the then existing law, a farm and the buildings on it specially for that purpose.

2. IDEM—*Amendment—Case at bar* —Where by such purchase, under Code 1873, ch. 84, § 6, city of Richmond established, January 30th, 1886, a small-pox hospital near its limits, but within Henrico county, her right to use the same for the purpose for which it was thus established was not impaired by an act approved February 5th, 1886, amending that section, and providing that the consent of the county court and the board of supervisors of the county in which it is proposed to locate the hospital be first obtained, as that act was not retrospective in its purpose and effect.

3. CONSTRUCTION OF STATUTES—*Retrospective.*—A statute is never construed to be retrospective, unless the intent that it shall so operate plainly appears upon its face. This rule applies even to *remedial* statutes. Its meaning must be arrived at from its own language, and not from the declarations of its draftsman, &c.

Appeal from decree of circuit court of city of Richmond, entered February 26th, 1887, in an injunction suit wherein the board of supervisors of Henrico county was plaintiff, and the city of Richmond was defendant. The decree perpetuated the injunction restraining the defendant from using the "Morris farm" for the purpose for which it had been purchased, to-wit: for a small-pox hospital, and the defendant obtained an appeal to this court. Opinion states the case.

*C. V. Meredith,* for the appellant.

*Courtney & Patterson,* and *Geo. W. Thomas,* for the appellee.

1. The *purchase of a site for,* does not constitute *per se* the establishment or location of, a small-pox hospital;

2. In construing statutes, the legislative intent is the cardinal rule of interpretation;

3. The act approved February 5th, 1886, while general in its terms, was designed primarily to meet this particular case;

4. Said act is *remedial* in its nature, and should be construed so as to suppress the mischief and advance the remedy contemplated thereby;

5. A city council cannot delegate to a committee the performance of any legislative function, and hence any attempt to do so is *ultra vires,* null and void;

6. The establishment of a small-pox hospital is essentially an exercise of legislative power entrusted solely to the council; and

7. A subsequent ratification by the council of acts done by its committee cannot operate by relation from the time of performing such acts.

FAUNTLEROY, J., delivered the opinion of the court.

The certified copy of the record of the said suit presents the pleadings and facts of the case. In December, 1885, there was a statute of Virginia (Code 1873, ch. 84, § 6) in the following words: "The council of any town, or the court of any county, may establish in such county, or in or near such town, hospitals, which shall be subject to regulations not contrary to law, made by such council or court." This statute had been in force from 1831.

In pursuance of the power granted by that statute, the board of aldermen of the city of Richmond, on the fourteenth day of December, 1885, enacted: "Be it resolved (the common council concurring), That a committee of seven be appointed, four from the common council and three from the board of aldermen, whose duties shall be to purchase a site for a small-pox hospital between the Brook and Mechanicsville turnpikes; and that the sum of ($7,000) seven thousand dollars, or so much thereof as may be necessary, be and is hereby appropriated for said purpose; and the committee on finance is hereby instructed to provide the said amount by bonds or otherwise." The common council concurred in the said resolution, January 4, 1886, and the mayor approved it January 5, 1886. A committee was appointed, as provided in the said resolution, and on January 19, 1886, they met and authorized their chairman to advertise for ten days in *The State* and *Dispatch* for a suitable site for a small-pox hospital, in accordance with the resolution of the council. The following advertisement appeared in both the said newspapers: "Wanted to purchase, for cash, a farm north of the city of Richmond, and between the Mechanicsville and Brook turnpikes, for a small-pox hospital, distance from the city not to exceed five miles. All propositions must be in writing, addressed to R. B. Chaffin, chairman council committee."

During the appearance of this advertisement the city was offered a place known as the "Morris farm," situated between the Mechanicsville and Brook turnpikes, and about three or four miles from Richmond. The committee visited and examined the place, and, being satisfied that it was suitable, purchased it for the price of $5,600, for a small-pox hospital. It was selected and purchased for that purpose alone, under the aforesaid authority and directions of the council of the city of Richmond, by a

special committee appointed for that expressed and sole purpose. The purchase was made on the twenty-ninth day of January, 1886, from a special commissioner of the circuit court of Henrico county, who reported the sale to the said court as having been made to the city of Richmond, (who had made the purchase for the specified purpose,) for the agreed and adjusted price of $5,600, which the city of Richmond desired to pay in cash, and to receive a deed for the property immediately.

The said court, by its order of that day, approved the sale, and directed the execution and delivery of a deed for the said property to the city of Richmond, which deed was executed by the said special commissioner and delivered to the city of Richmond on the thirtieth day of January, 1886, and duly recorded. Thus, on that day, the city had exercised her right, under the power and in the mode provided in the law of the State for the establishment of a small-pox hospital. It was consummated, and nothing remained to be done. The enactment of the city council had been fully carried out. It had appropriated and paid its money for the farm, and the houses thereon, for a small-pox hospital. By the said purchase, under the definite and definitive resolution of the city council, the said farm and the houses thereon were dedicated and established for the purpose of a small-pox hospital, (see *Bolling* v. *Petersburg*, 8 Leigh, 233,) and the city of Richmond so regarded it; for at the next meeting of the board of aldermen, held February 8, 1886, the only resolution passed was a simple order, turning over the said property to the committee on health, in which order the common council concurred at its next meeting, held March 1, 1886.

On January 30, 1886, a bill amending the statute (Code 1873, ch. 84, § 6) was passed through both houses of the general assembly, under a suspension of the rules, as follows: "The council of any town, or the court of any

county, may establish in such county, or in or near such town, hospitals, which shall be subject to regulations not contrary to law, made by such council or court, provided, however, that the council of any city or town desiring to locate such hospital outside of the limits of their corporation must first obtain the consent of the county court and the board of supervisors of the county in which they propose to locate, as to the site to be selected for the hospital," etc. This act was signed by the governor on February 5, 1886.

After the said amendment of the law, the county of Henrico insisted that the said city of Richmond could not use the said Morris farm for a small-pox hospital. The city insisted that the hospital had been duly established according to law before the said amendment of February 5, 1886, and that her right to use it for the purpose for which it had been established could not be affected by the act of February 5, 1886. The county and city officials had several conferences, to see if their differences of opinion could not be removed or reconciled without the cost, delay and vexation of litigation, the president of the board of health of the city urging that there was small-pox in the city of Norfolk, Va., and that it would probably spread to the city of Richmond, and thereby give occasion for the use of the hospital, which the city had established on the Morris farm, at any moment. The county of Henrico filed its bill, with affidavits and petition, praying for an injunction from the judge of the circuit court of Henrico county to restrain the city of Richmond from using the said Morris farm as a small-pox hospital. The city filed its answer, with exhibits and affidavits, claiming that it had already established its small-pox hospital at the said place before the passage of the act of February 5, 1886, and hence that her hospital, thus provided and established regularly and strictly according to law, is not affected by

the said act of Februry 5, 1886. On February 26, 1887, the judge of the circuit court of Henrico county entered a decree in this cause, awarding the injunction prayed for restraining the city of Richmond from using, or taking any steps towards using, the said Morris farm as a small-pox hospital, until the further order of the said court, and afterwards overruled the motion to dissolve the said injunction, and entered its order perpetuating the same. The city of Richmond appeals from this decree, and insists that it is erroneous and injurious to it.

The question presented for this court to decide is, had the city of Richmond "*established*" her hospital on the Morris farm, under section 6, ch. 84, Code 1873, before the passage of the amendatory act of February 5, 1886? Was it so "*established*" on January 30, 1886?

The law, before it was amended by the act of February 5, 1886, fully empowered cities and counties to establish hospitals; and this power is given, not to private persons or corporations, but to the public bodies which are divisional governments of the State. Then the proper meaning of the word used in the statute, section 6, conferring the power to "establish" hospitals, is to be determined by ascertaining how a government, petty or supreme, "establishes" a public institution. The constitution of the United States says : "Congress shall have power to establish post-offices and post-roads." Congress "establishes" a post-office by a law or by regulation of the post-office department, simply designating a certain place for that purpose, and the post-office is "established" at that place, whether it is administered in a public building of the United States for the purpose, or in a country store, or though no postmaster be yet appointed to conduct it. A municipal government establishes a hospital by purchasing a place specially for that purpose. A city council, by designating and directing the purchase of a place for a hospital, and by

appropriating the money of the city to pay for it, and by the payment of the money and the reception of a deed for the property or place purchased. The ordinance of the city or resolution or enactment under which it is purchased "establishes" the hospital; for "a city council is a miniature general assembly, and their authorized ordinances have the force of laws passed by the legislature of the State." *Taylor* v. *Carondelet*, 22 Mo. 105; *Wragg* v. *Penn*, 94 Ill. 19.

In the case of *Wartman* v. *Philadelphia*, 33 Pa. St. 206, an exactly similar question arose. The city council of Philadelphia had agreed to purchase certain lands for the sum of $650,000 for market places. The city already had a market. The contract for purchase was consummated January 30th. During the consideration of the purchase there was pending in the legislature an act forbidding the city from enlarging its debt, which act was signed February 2d. On that same day the city council ordered the issuance of bonds to pay the said $650,000 purchase-money. It was attempted to enjoin the city from issuing the said bonds, upon the ground that the city had a market already, and that, as the market had not been *established* at the grounds purchased for that purpose before the act of February 2d, forbidding the city to increase her debt, purchase was illegal, and in contravention of that act. The court said: "By the construction which common sense puts on the resolutions and ordinances of the councils, it seems very plain that they have purchased the property mentioned in the bill, with a view to the ultimate removal of the structures now standing on High street." The court refused the injunction, and took the common sense and accepted view of what is meant by a city "*establishing*" a *public* place; that, when a city purchased land for a certain use, it was thereby set apart for that use, and the use established at that place. This decision by the supreme court of Penn-

sylvania, a unanimous and able opinion, distinctly considered and decided upon what was *establishing* a market. See *Foster* v. *Board Park Com'rs of Boston*, 133 Mass. 321.

In the case of *Le Clair* v. *Davenport*, 13 Iowa, 210, the question arose as to what is meant by the power given a city to *establish* markets. There the council had agreed with a party that if he would build a house for a market, he might receive the rents, and the city would declare it a market, subject to the control of the city authorities. The court held that this was establishing a market, and sustained the proposition that for a government, petty or supreme, to *establish* a public institution, it is not necessary for it to build or own the building, and that it exercises its power to *establish* by enacting or ordaining a place for that institution.

A road is established from the date of the order, and by the order of the commissioners laying it out, (*Wragg* v. *Penn*, 94 Ill. 19,) although it had never been traveled by the public, nor any work done thereon. *Davies* v. *Huebner*, 45 Iowa, 574. An order of the selectmen of a town, that a road runs in a certain direction, is the laying out or establishing the highway. *Winooski Lumber Co.* v. *Colchester*, 57 Vt. 538; *State* v. *Babcock*, 42 Wis. 138; *Hark* v. *Gladwell*, 49 Wis. 172; *Foster* v. *Board Park Com'rs of Boston*, 133 Mass. 335.

Webster defines the word "establish," when used in the governmental exercise of power, as follows: "To enact or decree by authority, and for permanence; to decree; to enact; to ordain; said of laws, regulations, and the like."

In the light of these authorities, we think it is clear and indisputable that the city of Richmond had established its hospital, according to law, on the Morris farm, on January 30, 1886, and that, had the apprehended occasion required, it could and would have sent its small-pox patients out there, and used the place there for that purpose, on and

after the thirty-first of January, 1886. Having thus established its hospital on the thirtieth January, 1886, the city could not be affected in the use of that hospital by the act of February 5, 1886, unless that act be *retrospective* in its purpose and effect. A statute is never construed to be retroactive, except the intent that it shall so operate plainly appears upon its face. Sedg. St. Const. Law, 161, note *a*. " Every statute which takes away or impairs a vested right,. *acquired under existing laws* or creating a new obligation,. imposes a new duty, or attaches a new disability in respect. of transactions. or considerations already past, must be deemed retrospective in its operation, and opposed to those principles of jurisprudence which have been universally recognized as sound." Broom, Leg. Max. 68. Especially do courts shrink from holding an act retrospective when it affects public objects and duties, and, when it affects rights accrued and acts done by law for the public interest and necessities, it must be presumed that the law-makers of the new act did not intend it to be retrospective, unless that intent be expressed in the language, or plainly appear upon the face of the act itself. " It is the duty of the court to construe a law or ordinance, and gather its intention from the law itself, and not from contemporaneous avowals of the individual framers of it." *Barnes* v. *Mayor, etc., of Mobile,* 19 Ala. 707.

· The intention of the draughtsman of the act, or the individual members of the legislature who voted for and passed it, if not properly expressed in the act, it is admitted has nothing to do with its construction. The only just rule of construction, especially among a free people, is the meaning of the law as expressed to those to whom it is prescribed,. and who are to be governed by it. *Steamboat Co.* v. *Farmers' Transp. Co.,* 18 N. J. Eq. 24. In Potter's Dwarris on Statutes, 164, note, it is said : " But even *remedial* statutes are to be deemed *prospective* in their operation, and not to be applied

*to proceedings pending at the time of their enactment,* unless a contrary intent appears."

The act of February 5, 1886, is an amendatory act, and not an act of repeal. It does not prohibit, but authorizes the continued exercise of the power granted to cities and counties, and the amendment only requiring any city desiring to locate and acting to locate its hospitals in a county outside of its corporate limits, after the passage of that act, which is expressed to take effect only from the date of its passage, to first obtain the consent of the county authorities " as to the site to be selected for the hospital." Five days before the act of February 5th was passed the city had selected and purchased, and paid for, and received its deed for, and had located its site for its hospital on the Morris farm. " Locating " is " the act of selecting and designating lands which the person making the location is authorized by law to select." 2 Bouv. Law Dict. 124; *Foster* v. *Board Park Com'rs of Boston,* 133 Mass. 332, 333.

In the case of *Ely* v. *Holton,* 15 N. Y. 595, it was held the effect of an amendment of a statute, made by enacting that the statute " is amended so as to read as follows," and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change are to be considered as having been repealed, and again re-enacted, nor that the new provisions or changed portions should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment." This rule of construction was adopted by this court in the case of *Price* v. *Harrison,* 31 Gratt. 114. Judge Burks, delivering the unanimous opinion of the court, cited with approval the language from *Ely* v.

*Holton,* and on page 120 held that this rule of construction is in accordance with the canon of construction laid down in the Code of 1873, ch. 15, § 13, as follows: " No new law shall be construed to repeal a former law as to any offense committed against the former law, nor as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceedings," etc.

Before the amendment of the law by the act of February 5, 1886, the city of Richmond had already the *"right accrued"* to use the Morris farm for her hospital, and she had *"done"* an *"act"* legal, necessary, and expensive; and it is not to be *construed* that the legislature intended to defeat this *"right accrued,"* and to *disestablish* her " act done," by which she had established her hospital upon the Morris farm. We are brought to this conclusion irresistibly, both by logic and authority, and we cannot pronounce that the general assembly intended by the amendment of February 5, 1886, to thereby exercise its constitutional power to arrest any and all further action of the city of Richmond in the premises, without an express declaration or plain indication of its will and intention to *disestablish* the hospital which she has established lawfully upon the Morris farm, in the county of Henrico.

The circuit court erred in awarding the injunction, and erred in refusing to dissolve it, and the decree complained of must be reversed and annulled, and the injunction which was granted and perpetuated by the said decree is hereby dissolved.

DECREE REVERSED.