[Crim. No. 1625. In Bank.—July 31, 1911.]

Ex Parte F. B. GOODRICH, on Habeas Corpus.

MUNICIPAL CORPORATION—FIXING RATES FOR ELECTRICITY—ORDINANCE REQUIRING ELECTRIC LAMPS TO BE FURNISHED FREE IS VOID.—An ordinance of the city of Los Angeles, independent of and in no way referring to a prior ordinance fixing the rates to be charged for electricity furnished the city and its inhabitants, which purports to impose the duty upon all persons or corporations supplying electricity for lighting purposes of furnishing incandescent lamps to all consumers of electricity on demand and free of charge, is void, as being beyond the legislative power of the city council. Such ordinance works an unconstitutional confiscation of property, and cannot be sustained as a reasonable regulatory measure, and imposes a burden and duty upon a public service corporation in no wise appertaining to or growing out of its public functions. This is the necessary construction of the ordinance, notwithstanding the fact that the electric companies, at and prior to the time of the passage of the rate-fixing ordinance, had been in the practice of furnishing incandescent lamps to their customers free of charge, and that the city council had such fact in evidence before it in framing the rate-fixing ordinance.

ID.—CORPORATION UNDER NO PUBLIC DUTY TO FURNISH LAMPS.—The furnishing of incandescent lamps is not a part of the public duty of a *quasi* public corporation supplying electricity for light or power.

ID.—EVIDENCE—INTENT IN FRAMING ORDINANCE—INTERDEPENDENCE OF SEPARATE ORDINANCES.—Evidence of city officials is inadmissible to show what was the intent of the city council in framing such rate-fixing ordinance, or what by it the council intended to include or exclude. Such facts are to be determined from the face of the ordinance itself. Nor is their testimony admissible to establish that any relationship or interdependence exists between such rate-fixing ordinance and the ordinance requiring the furnishing of incandescent lamps free of charge. If such interdependence or relationship does in fact exist, it must be shown from an inspection of the ordinances themselves, or it cannot be shown at all.

ID.—ORDINANCE CONSIDERED AS AMENDMENT TO RATE-FIXING ORDINANCE —UNLAWFUL CONDITION TO DOING BUSINESS.—Such ordinance, if considered as an amendment to the rate-fixing ordinance, would still be invalid. It would then amount to a declaration by the city council that the companies could collect the fixed sum for supplying electricity, provided that they furnish the consumers with free incandescent lamps. This would be the imposition of an illegal condition upon the right to transact a public business, and would be a failure to fix rates at all, as to all companies which were unwilling to conform to the condition.

ID.—INTENT OF STATUTE HOW DETERMINED.—There can be no intent in a statute not expressed in its words, and no intent upon the part of the framers of a statute which does not find expression in their words.

ID.—EVIDENCE OF LEGISLATORS INADMISSIBLE TO SHOW INTENT.—The testimony or opinions of individual members of a legislative body are not admissible for the purpose of showing what in fact was intended or meant by a statute.

ID.—POWER OF CITY COUNCIL OVER PUBLIC SERVICE CORPORATION.—The power of the city council in dealing with public service corporations is limited to a supervisory control over the business, the administration, and the functions of the corporation in the latter's dealings with the public. Beyond these matters the city council cannot go.

ID.—MATTER NOT AFFECTING PUBLIC FUNCTIONS.—The fact that, as a matter of private arrangement, the corporation has been doing a particular thing, not pertaining to its public functions, does not justify the city council in an endeavor to make the continued doing of that thing compulsory under the law.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

O'Melveny, Stevens & Millikin, William A. Cheney, and H. H. Trowbridge, for Petitioner.

John W. Shenk, City Attorney, and Guy Eddie, City Prosecutor, for Respondent.

HENSHAW, J.—Petitioner is one of the officers and agents of the Pacific Light & Power Company. The Pacific Light & Power Company is a *quasi* public corporation, engaged in supplying electricity for light and power to the general public in the city of Los Angeles. Petitioner was convicted criminally of a violation of ordinance No. 20,455 (new series), of the city of Los Angeles. He seeks his discharge under this writ, contending that the ordinance is void. The ordinance in terms declares it to be unlawful for any person, firm, or corporation, or agent thereof, supplying electric light or electric current for lighting purposes to the city of Los Angeles, or to the inhabitants thereof, "to make any charge or to demand, collect or receive any compensation or consideration, or any payment, deposit or advance for furnishing any carbon filament incandescent light of eight or more candle power to or for installing the same . . . or for renewing any such lamp that shall have burned out." The ordinance further provides that it shall be unlawful for any person, firm or corporation, or the agent thereof, so furnishing or supplying electric light or electric current "to fail, refuse or neglect to furnish on demand free of charge, either for original installation or for renewal of lamps that have burned out, a sufficient number of carbon filament incandescent lamps to light all electric light fixtures belonging to or used by each person, firm, or corporation, to whom electric light or electric current for lighting purposes is furnished or supplied." It is for petitioner's refusal, as the agent of the Pacific Light & Power Company, so to furnish incandescent lamps free upon demand that he has been convicted and adjudged to suffer imprisonment, as provided by the terms of the ordinance.

The return to the writ is made by Alexander Galloway, chief of police of the city of Los Angeles. Besides the usual statement that he holds the body of the prisoner by virtue of a commitment under a criminal judgment which he believes to be legal, the return sets forth many allegations of evidentiary

matter which will hereinafter be considered. The return is accompanied by an affidavit of Theodore B. Comstock, the contents of which affidavit is also a matter for later consideration.

It will facilitate the understanding of the questions if a narrative resumé be given of the facts. The various companies and corporations supplying electric light and power to the inhabitants of the city of Los Angeles filed with the city council, as the law requires them to do, itemized statements of their respective incomes, expenses, and physical properties. The information derived from these statements, with such other knowledge and information as the city council of Los Angeles might acquire, was to be used in the performance of the duty and power imposed and conferred of fixing the rates which could be charged consumers for the use of electricity. No question arises over the right, duty, and power of the city council in this regard. The statements filed by these companies with the council showed the cost to the companies of furnishing free of charge to their consumers incandescent lamps. No ordinance or other law at this time compelled, or attempted to compel, the companies so to furnish these incandescent lamps free of charge, but it appears from affidavit, and is undisputed, that the practice of so furnishing incandescent lamps to consumers free of charge was one that grew up amongst the electric companies, owing to competition, in their efforts to retain old consumers and to secure new ones, and thus increase the sale of their fluid. The matter rested in each instance upon contract between the company and the private consumer.

In the performance of its duty to fix rates for electricity the council, by ordinance No. 20,327 (new series), fixed such rates for the year commencing July 1, 1910, and ending June 30, 1911. This ordinance made no attempt to impose upon the electric companies the duty of furnishing incandescent lamps. Subsequently, by a separate and independent ordinance, in no way referring to the rate-fixing ordinance, the council passed the penal ordinance here in question, making it mandatory upon all electric companies to furnish incandescent lights upon demand free of charge.

Such is the case shown by the record. The contention of petitioner is that the council had not the power to impose upon the *quasi* public companies and corporations supplying elec-

tricity the burden of furnishing free incandescent lamps, and that the attempt to do so was a confiscation of property; that treated as a regulatory provision, it was equally in excess of the powers of the company and void: 1. As being foreign to any of the functions of the corporation over which the council could exercise regulatory power; that the council's regulatory powers could only go to the rates charged and to the methods of safety and convenience by which electricity was conveyed to the consumer, whereas this so-called regulation commanded them to do a thing in no respect pertaining to their public business of purveying electricity for general use; and 2. Because, if treated as regulatory, it was mere confiscation under the guise of regulation.

Respondent undertakes to meet these objections by the return of the chief of police and the affidavit of Theodore B. Comstock. The chief of police declares that the city of Los Angeles, in fixing the price of electricity by ordinance No. 20,327 (the rate-fixing ordinance) "took into consideration and allowed in said valuation the cost of furnishing and equipping the customers of said persons, firms and corporations with carbon filament incandescent lights of eight or more candle power," and that the city of Los Angeles "allowed as a part of the expenditure charges" of electric companies the "specific expenditure for renewing to the customers of said persons, firms and corporations supplying electric light and electricity the furnishing free upon demand to the said customers the carbon filament incandescent lamps." The chief of police further asserts "that the city, when so fixing said rates as aforesaid for the year commencing July 1, 1910, and ending June 30, 1911, contemplated and intended that the said custom of furnishing and supplying said carbon filament incandescent lamps free and without charge should and would be continued without change by said persons, firms and corporations, etc." Further, the chief of police deposes that the city of Los Angeles, after the passage of ordinance No. 20,327, new series (the rate-fixing ordinance), ascertained that the electric companies proposed to charge for incandescent lamps "and that after so ascertaining the intention of the aforesaid persons, firms and corporations the said city of Los Angeles further exercised its power to regulate the sale and use of electric light and fixed and determined the price to be charged

for the same in the city of Los Angeles, by enacting ordinance No. 20,455, new series, (the ordinance under which petitioner was convicted). It is then alleged that this last named ordinance "was enacted by the city of Los Angeles for the purpose of reinforcing and aiding said ordinance No. 20,327, by prohibiting persons, firms and corporations . . . from defeating or evading the rate provisions of said ordinance No. 20,327 (new series), by making the aforesaid additional charge for furnishing carbon filament incandescent lamps of eight or more candle power."

Theodore B. Comstock in his affidavit joins the chief of police in declaring what the members of the city council of the city of Los·Angeles had in mind when they legislated, and what their legislation means. He makes affidavit that since the fifth day of January, 1910, he has been the executive officer and engineer of the board of public utilities of the city of Los Angeles. · Amongst the duties of the board of public utilities is to make each year a thorough investigation into the affairs of all persons, firms, or corporations supplying electricity for public use, and to gather data upon this subject to present to the consideration of the city council in aid of their rate-fixing powers and processes. Further, the board of public utilities is "to analyze the statements made to the city council by said persons, firms and corporations bearing upon their income and expenses and physical properties relating to the business of furnishing electric current for lighting purposes." Mr. Comstock deposes that the board of public utilities entered upon the discharge of these duties and that he, as executive officer and engineer, has been in direct charge of the work of collecting such information and data. As part of this work he has examined the statements filed with the city council by the Pacific Light & Power Company and by other persons, firms, and corporations dealing in electricity; that those statements "include in the inventory of the plant and property thereof, the value and cost of the carbon filament incandescent lamps of eight or more candle power furnished by said persons, firms and corporations to consumers and customers free of charge during the year 1909, and said statements also include in the expense accounts of said persons, firms and corporations the cost of renewing and replacing such lamps free of charge to consumers for said

year." Mr. Comstock then deposes that the board of utilities made its recommendation to the city council, which recommendations included a schedule of charges for the service of supplying electricity, and that the board of utilities "took into consideration and allowed in the said plant and property valuation above mentioned the item of expense of furnishing to consumers free of charge carbon filament incandescent lamps of eight or more candle power, and took into consideration and allowed in the disbursements the item of expense for renewing said carbon filament incandescent lamps of eight or more candle power free of charge to the customers of said persons, firms and corporations." Mr. Comstock next deposes that the council "adopted the rates and schedule of charges for such service so recommended by said board of public utilities." He proceeds further to depose that he believes, after careful study and consideration, that the revenues of the companies furnishing electricity in obedience to ordinance 20,327 (new series), and 20,455 (new series), will be equal to or greater than the revenue received by such companies in the preceding year; further, that he has made a careful investigation of other cities, and states that "fifty important cities of the United States have reported on the subject, and that in thirty-six thereof the persons, firms and corporations furnishing electric current for lighting purposes, supply and furnish to customers and consumers carbon filament incandescent lamps of eight or more candle power free of cost to consumers, and in fourteen of said cities a charge is made for such lamps," and, finally, that his investigations show that the Los Angeles electric companies "for many years prior to the passing of said ordinance No. 20,455 (new series), furnished, supplied and renewed carbon filament incandescent lamps of eight or more candle power to consumers free of charge."

In thus setting forth the declarations of the chief of police and of Mr. Comstock, it is not to be assumed that this court has disregarded all the principles of law governing the interpretation of statutes. The exposition is made so as fully and fairly to present the contentions of respondent. But it still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which

does not find expression in their words. (2 Lewis, Sutherland Stat. Construction, sec. 388.) It still remains true that even legislative debates are not appropriate sources of information from which to discover the meaning of the language of the statute. (*United States* v. *Trans-Missouri Freight Assoc.,* 166 U. S. 290, [17 Sup. Ct. 540, 41 L. Ed. 1007]; *American Net & Twine Co.* v. *Worthington,* 141 U. S. 468, [12 Sup. Ct. 55, 35 L. Ed. 821].) And it still remains true that even the testimony or opinions of individual members of the legislative body are not admissible for the purpose of showing what in fact was intended or meant by an act. (*State* v. *Burk,* 88 Iowa 661, [56 N. W. 180]; *Richmond* v. *Supervisors,* 83 Va. 204, [2 S. E. 26]; *People* v. *Smith,* 78 Hun, 178 [28 N. Y. Supp. 912].) It is neither permissible nor possible, therefore, for either the chief of police or Mr. Comstock to say what was in the mind of the city council in framing their rate-fixing ordinance, or what by it the city council intended to include or exclude, other than as these facts shall appear from the face of the ordinance itself. Nor is their testimony admissible to establish that any relationship or inter-dependence exists between ordinance 20,327 (new series), and ordinance 20,455 (new series), for if such interdependence or relationship does in fact exist, it must be shown from an inspection of the laws themselves, or it cannot be shown at all. So, for the same reason, it is permissible in a proper case to show what evidence the council had before it, but the conclusions which it reached from that evidence are to be found alone from the expressions in the ordinance and are not a subject for extrinsic evidence. Thus, it is permissible to show that the statements of the electric companies established that they had been furnishing incandescent lamps to consumers without charge, and the cost to which the companies were put by so doing. It is a fair inference that this evidence was weighed and considered by the city council in fixing the rates, but not even the members of the city council themselves, and of course not the chief of police or Mr. Comstock, attempting to speak for them, would be permitted to say what they meant or intended concerning this matter in the ordinance which they framed and adopted. The ordinance itself must speak upon this matter, or no one can speak. (*Delaplane* v. *Crenshaw,* 15 Gratt. (Va.) 457.)

CLX Cal.—27

What, then, is the legal presentation of this matter? It is that the city council had before it evidence that by private convention and contract between the various electric companies and their consumers, these electric companies had been in the practice of furnishing to their consumers free of charge, under certain restrictions, incandescent electric lights. With this knowledge they passed a rate-fixing ordinance complete in itself, prescribing the compensation which such companies might exact of consumers who used their electricity. This ordinance in no way attempted to impose any duty or burden upon the companies in the matter of furnishing incandescent lamps. Subsequently, by a separate ordinance, containing no reference whatsoever to the rate-fixing ordinance, the city council declared that every company furnishing electricity must furnish free incandescent lamps, or be subject to fine and imprisonment in every case of failure so to do. In point of law these ordinances are independent and unrelated. The second ordinance does not in matter, substance, form, time, or term deal directly or indirectly with the rates which had theretofore been fixed. But if it did, if it had made express reference to the rate-fixing ordinance and declared that it was amendatory thereof and supplemental thereto, which is the utmost for it which respondent can or does claim, the legal situation would not be different.

What is the legal situation? The duty of these public service corporations was to supply their commodity in safe and convenient form to the general public. Over these matters of safety and convenience the city council had the unquestioned power to pass regulatory ordinances. It was also the duty of these companies to charge no more for their commodity than the maximum rate which might be fixed by the council. The correlative rights of the council in the matter were to pass reasonable regulations touching the mode and manner of the supply, and reasonable regulations touching the price.

The argument of respondent is that the sole question of the compulsory supplying of incandescent lights by the companies free of charge is the question of the reasonableness of the provision as a regulatory measure. He demonstrates to his satisfaction that it is reasonable and concludes that this is an end of the discussion. His argument here follows:

"Does the requirement of furnishing incandescent lamps place it within the definition of being reasonable and of being natural to and consistent with the kind of business which is required to furnish them? Its reasonableness is obvious: First. It is an unmistakable convenience to consumers; second. It is a necessity and should be supplied to the consumer at the least possible cost and least possible trouble to himself; third. It is a necessary incident to the supplying of electric light; fourth. It is no more foreign to or inconsistent with the business than supplying the electrical manufacturing machinery, the wires to conduct electricity, the poles to sustain the wires, or the meters to measure the quantity consumed; fifth. It is already the practice of the companies supplying electric light, in accordance with one method or another, to supply these incandescent lamps. That furnishing these incandescent lamps is natural to and consistent with the business of electric lighting companies has been answered by the foregoing remarks on reasonableness." But every word of this, except the fifth specification, which is without legal value upon the question of reasonableness, would apply as well to an ordinance compelling electric companies to wire the houses, since: 1. The wiring is unmistakably a convenience to consumers; 2. It is a necessity which should be supplied to the consumer at the least possible cost and trouble to himself; 3. It is a necessary incident to the supplying of electric light, and, 4. It is no more foreign to or inconsistent with the business than supplying electrical manufacturing machinery. Indeed, the same could be said of an ordinance requiring gas companies to put in the gas plumbing and fixtures free of charge, or to an ordinance requiring water companies to do the same with water plumbing and fixtures. The primary question is not at all one of reasonableness, but one of legislative power. Only after the existence of the power is shown does the question of the reasonableness of its exercise arise. Thus there was a time under earlier republics when sumptuary laws to restrain reckless expenditures were deemed important and even essential to the existence of the government. In this extravagant age, the reasonableness of a law limiting women's expenditure in the matter of attire, or men's expenditure in the indulgence of their appetites, could be supported with much plausibility.

But the argument would never reach the question of reasonableness, since it would cease and the question would be determined solely by consideration of the want of legislative power.

The power and the limitations upon the power of the council in dealing with these public service corporations has been indicated. That power is a power of supervisory control over the business, the administration and the functions of the corporation in the latter's dealings with the public. Beyond these matters the city council cannot go. The whole subject is epitomized in the following language of the supreme court of the United States in *Chesapeake & Potomac Tel. Co.* v. *Manning,* 186 U. S. 238, 247, 22 Sup. Ct. 881, 885, 46 L. Ed. 1144]: "A railroad company may, if authorized by its charter, carry on not simply its strictly railroad business, but also an establishment for the manufacture of cars and locomotives. The fact that it is engaged in these two different works would not in itself subject the manufacture of cars and locomotives to the supervision of the legislature, although such body would have the right to regulate the charges for railroad transportation." The city council can no more compel a public service corporation to do or abstain from doing anything not pertaining to the public service itself than it can compel a private individual. For, outside of its public functions, the corporation is a private corporation. Nor does the fact that, as a matter of private arrangement, the corporation has been doing a particular thing, not pertaining to its public functions, justify the legislative body in an endeavor to make the continued doing of that thing compulsory under the law. This argument was completely answered by the supreme court of the United States in *Lakeshore & M. S. Ry. Co.* v. *Smith,* 173 U. S. 684, [19 Sup. Ct. 565, 43 L. Ed. 858], in the following language: "What the company may choose voluntarily to do furnishes no criterion for the measurement of the power of a legislature. Persons may voluntarily contract to do what no legislature would have the right to compel them to do. Nor does it furnish a standard by which to measure the reasonableness of the matter exacted by the legislature. The action of the company upon its own volition, purely as a matter of internal administration, and in regard to the details of its business which it has the right to change at any moment,

furnishes no argument for the existence of a power in a legislature to pass a statute in relation to the same business imposing additional burdens upon the company." (See, also, *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403, [17 Sup. Ct. 130, 41 L. Ed. 489]; *Missouri Pacific Ry. Co.* v. *Nebraska,* 217 U. S. 196, [30 Sup. Ct. 461, 54 L. Ed. 727].)' No one can seriously assert that the furnishing of incandescent lamps is a part of the public duty of a *quasi* public corporation supplying electricity for light or power. No law of the state attempts in the remotest extent to impose such a duty. The public duty of such a corporation is fully performed when it has brought its commodity safely and conveniently to the door of the consumer. Within that door the company is not by law obliged and may not by law be compelled to go for any purpose foreign to the public service it is called upon to render, and that the purpose here contemplated is foreign is abundantly established. (*Snell* v. *Clinton Electric L. H. & Power Co.,* 196 Ill. 626, [89 Am. St. Rep. 341, 63 N. E. 1082, 58 L. R. A. 284]; *Burk* v. *Mead,* 159 Ind. 252, [64 N. E. 880].) So that, aside from the fact that the execution of this criminal ordinance would work an unconstitutional confiscation of property, a fact itself conclusive against the validity of the ordinance, it attempts by law to impose upon a public service corporation a burden and a duty in no wise appertaining to or growing out of its public functions. It has been said that the fact that these companies were furnishing incandescent lights to the consumers free of charge being in evidence before the municipal council, it is a legitimate inference that this fact was considered by the council in fixing the rates. This is true, but the determination which they reached, after such consideration, must be discovered from the ordinance itself. As has been pointed out, the rate-fixing ordinance contains no expression upon the subject. What is to be deduced from its silence, therefore, is solely by way of argument, and if, as respondent argues, the city council did in fact make an allowance to these companies because of the gifts which they were making to their consumers, the answer is that this was a very improper thing for the council to do. The council has no right to recognize and allow for gifts, donations, or charitable bestowals made by public service corporations, however commendable from the ethical point of view these things

may be. A gas company may furnish the gas and the gas fixtures to a hospital free of charge; it might donate fifty thousand dollars a year to the maintenance of some worthy charity, but the council could not allow a return to a company for such donations; still less could it exact that their continuance for succeeding years should be compulsory.

As has been said, to treat the penal ordinance as amendatory of the rate-fixing ordinance does not relieve the difficulty. It would then amount to a declaration by the city council that the companies could collect the fixed sum for supplying electricity, provided that they furnish the consumers with free incandescent lamps. This would be, again, but the imposition of an illegal condition upon the right to transact a public business, and it would be a failure to fix rates at all, as to all companies which were unwilling to conform to the condition.

No case cited by respondent in any wise supports his contention, that the legislature may regulate or control a public service corporation in its private affairs as distinguished from its public duties, or that it may compel such a corporation to do or abstain from doing anything not pertinent to its public functions as a condition precedent to its right to perform those functions. One and all, the cases are addressed to the familiar principle herein repeatedly announced, that the legislature may pass reasonable rules and regulations touching the performance of these public functions. They do not, therefore, call for extended review, but as typical of them may be instanced *State* v. *Gas Co.,* 34 Ohio St. 572, [32 Am. Rep. 390], where the gas company, under a special charter was invested "with franchises to be exercised to subserve the public interest," and it was held that under express law the regular rates which the gas company could charge for the use of meters was subject to regulation. *Budd* v. *New York,* 143 U. S. 517, [12 Sup. Ct. 468, 36 L. Ed. 247], a case in which respondent finds a strong resemblance to the case at bar, is simply this:—a declaration by the supreme court of the United States that the business of grain elevating is a business charged with a public trust, and therefore subject to rate regulation; that the public business consisted: 1. In shoveling grain to the leg of the elevator to keep the elevator buckets full; and 2. The hoisting, transferring, and weighing of the grain ele-

vated by the buckets; that it was not unreasonable in fixing a rate not exceeding five eighths of a cent a bushel for the performance of the latter duty, to prescribe also that the former duty should be done at actual cost, since the reasonable purpose of the provision was to prevent collusion between the elevator owners and the shovelers' union, whereby the rate fixed could be evaded and the amount charged greatly increased. It should be apparent, we think, that these principles and this decision have nothing in common with an ordinance requiring a public service corporation to engage in the private enterprise of making gratuitous distribution of incandescent lamps to their consumers upon demand.

The ordinance in question, therefore, being plainly in excess of the legislative powers of the city council of the city of Los Angeles, and therefore, void, it is ordered that the prisoner be discharged.

Lorigan, J., Sloss, J., Shaw, J., Angellotti, J., and Melvin, J., concurred.